In the Matter of the Application of THE CITY OF NEW YORK, Appellant, Relative to Acquiring Title, etc., to the Lands, Tenements and Hereditaments Required for the Southerly Extension of Seventh Avenue, Borough of Manhattan, City of New York.

THE DUVAL COMPANY, and HENRY B. WELSH and MARGARETTA K. WELSH, as Executors, etc., of HENRY WELSH, Deceased, Respondents.

First Department, April 29, 1921.

**Municipal corporations — city of New York — condemnation of land for street purposes — proof of annual rental value of unexpired leasehold interest — duty of commissioners as to ascertaining value of property — value of leasehold interest over and above rent reserved must be ascertained — award need not separately state awards for land, improvements, etc.— confirmation of award to executors of estate owning land and to tenant.**

In proceedings to condemn land in the city of New York for street purposes, the fact that a tenant has agreed to pay a specified annual rental for a short period, does not prove the fair annual rental value of the premises, but evidence based on general rentals of similar property in the neighborhood would be more cogent evidence of the actual rental value.

It is the duty of the commissioners first to determine the market value of the property taken at the time title thereto vests in the city, and the damages to the remainder of the parcel in consequence of being separated from the whole.

However, if there is proof of an outstanding lease and evidence is offered as to the value of the unexpired term over and above the amount of the rent reserved, it becomes the duty of the commissioners to determine its value and to deduct the amount thereof from the total of the awards for the parcel as a whole and to award it to the tenant.

The original award need not be separated so as to show separately the award made for the land and for the improvements thereon and for the damages to the remainder.

Where the original award of damages was made to the executors of the estate to which the property belonged, although there was proof of an outstanding leasehold interest which would run three years and eight months and which was not considered, but on objection by the tenant the commissioners reopened the award, increased the total award by $3,000, reduced the amount awarded to the executors by $2,000, and made an award to the tenant of $5,000, an order confirming the award as to the leasehold interests was properly confirmed, but it was error to refuse confirmation of the award to the executors.

APPEAL by The City of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of December, 1920, resettling and amending *nunc pro tunc* an order entered in said clerk's office on the 19th day of November, 1919, confirming the report of the commissioners of estimate as to the award to The Duval Company, for its leasehold interest in damage parcel No. 249, and refusing to confirm the report of the commissioners with respect to the award to the executors of Henry Welsh, deceased, for damages to the fee subject to the leasehold and returning the report to them for further consideration with respect thereto.

*L. Howell LaMotte* of counsel [*Joel J. Squier* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellant The City of New York.

*Ralph L. Baldwin* of counsel [*Truman H. & George E. Baldwin*, attorneys], for the respondents Henry B. Welsh and Margaretta K. Welsh, as executors, etc.

*Michael J. Mulqueen* of counsel [*Charles Lamb* with him on the brief], for the respondent The Duval Company.

LAUGHLIN, J.:

The commissioners of estimate and the commissioner of assessment were appointed by an order of the Supreme Court on the 31st of July, 1913. The proceeding embraced 254 damage parcels and the awards therefor aggregated the sum of $5,971,635.67. On the 18th of February, 1918, the commissioners signed and filed with the bureau of street openings of the law department their abstract of damages; and notice of the filing thereof was duly given as required by law. With respect to the parcel in question, although the lease had been proved before the commissioners and evidence had been given in behalf of the lessee tending to show that the actual rental value was considerably more than the rent reserved and that, therefore, the lease had a substantial value and this evidence was uncontroverted, the commissioners made no award to the tenant, but made the entire award for the parcel to the executors. To this the tenant, pursuant to the notice, filed objections, and thereupon the commissioners reopened the hearing and received the testimony of another witness in behalf of the tenant. The executors were represented at the hearing and neither cross-examined the witness nor offered any further evidence. The commissioners thereafter considered the evidence originally offered in behalf of the tenant and the additional evidence and the arguments made in behalf of the tenant and the executors and prepared and filed new awards for this parcel increasing the total award therefor by $3,000, but reducing the award of $98,913.20 originally made to the executors by $2,000 and awarding to the tenant $5,000. The commissioners then formally summoned the executors before them to show cause why the original award to them should not be reduced by $2,000, and heard arguments in behalf of the executors, who, however, offered no further evidence. The original report as thus amended was duly presented for confirmation. No objection was filed to the award to the tenant, but the executors filed objections to the award to them. With the exception of the award to the executors for this parcel and a small award for damage parcel No. 117-A, the report was confirmed and acquiesced in.

The city contends on the appeal that the award to the executors should have been confirmed; but it further contends

First Department, April, 1921.                    [Vol. 196

that if the order referring the report back to the commissioners with respect to the award to the executors is sustained, then the award made to the tenant should also be returned, and it so contended on the hearing on the motion for confirmation, although it filed no objections to the award to the tenant and does not even now claim that the award to the tenant was excessive. The award for damage parcel 117-A was also referred back to the commissioners, but that part of the order has evidently been acquiesced in and is not involved on this appeal.

The theory on which the court remitted the award to the executors back to the commissioners as shown by the opinion is that the commissioners did not make the award to the tenant and to the executors as owners of the fee subject to the lease on the same theory, as required by *Matter of City of New York* (*Delancey Street*) (120 App. Div. 700). We are of opinion that the record does not show that the awards to the tenant and to the executors were made in violation of the rule prescribed by that decision and that the award to the owners should have been confirmed. The record presents for review no point with respect to the reception or exclusion of evidence, for no evidence received was objected to, with the exception that the city objected generally to the commissioners so reopening the hearing and receiving the further testimony of the witness for the tenant and no evidence offered was excluded on objection interposed thereto.

The theory on which counsel for the executors asked that the award to them be remitted to the commissioners and on which he endeavors to sustain the order in that respect, is that the awards as finally made show that the award to the tenant for the value of the unexpired leasehold was based on an assumed rental value of $10,224 per annum and the award to the executors was based on the assumption that the annual rental of $8,750 reserved in the lease was the fair rental value of the premises and that the value of the whole parcel was determined by capitalizing the rent reserved in the lease at seven per cent. That contention is not borne out by the record and is predicated wholly on speculation.

The damage parcel in question was known as Nos. 131–137 Franklin street, having a frontage on the southerly side of

Franklin street of eighty-four and fifty-four one-hundredths feet and extending in depth at right angles to Franklin street eighty-four feet, but being of the width of only forty-four and eighty-one one-hundredths feet in the rear, on which was erected a six-story loft building. From the easterly side of this parcel an irregular piece was taken containing five thousand, five hundred and fifty square feet, leaving an irregular remainder on the west having a frontage on Franklin street of twenty-four and one-half feet and containing two thousand and thirty square feet. It was conceded that the taking worked a total destruction of the building. The award, therefore, was for the value of the land taken and of the building and the damage to the remainder of the parcel. The entire property was leased to the tenant on the 3d of September, 1907, for a term of nine years and seven months ending May 1, 1917. The unexpired period of the lease when title vested in the city was three years and eight months. The rent reserved per annum divided by the number of square feet of flooring space in the building gives the rental per square foot of twenty-two and seven-tenths cents.

On the original hearing an expert for the executors testified that the reasonable market value of the property as a whole when title to part of it vested in the city was $193,113, and that the value of the land alone was $112,813, and that the value of the building was $80,300, and the value of the land not taken was $31,240, giving the total damages as $161,873. He valued the land without the building at $16 per square foot. On the total valuation of the parcel as given by him the rent reserved in the lease was only four and one-half per cent. An expert builder called by the executors testified that the value of the building less machinery and elevators was $74,012.28. A machinery expert called by them testified, in substance, that the damage to the machinery was $5,678. An expert for the tenant testified, in substance, that the market value of the lease for the unexpired term over and above the rent reserved was $15,000, and that the fair annual rental value was $13,500 per annum. It appeared on his cross-examination that he arrived at his opinion with respect to the annual rental value by estimating the total value of the property at $192,000, the land at $98,568 and the building

at $93,000, and by calculating that the property should return to the landlord a rental of seven per cent on the valuation. Plainly that was very theoretical and of but little probative force save as it was supported presumably by his knowledge of the adaptibility of the premises and their availability and the demand therefor and the probability with respect to the continuance thereof.

An expert called by the city gave as his opinion that the market value of the parcel as a whole including the building was $113,700; and he estimated the value of the land as $77,700 and of improvements as at $36,000 and the value of the land remaining as $25,578. According to his opinion, the total damages were $88,122 which was made up of $52,122 for the land taken and the damages to the remainder and $36,000 for improvements. He took as a unit of valuation $14 per square foot of the land, thus differing $2 per square foot from the expert called by the executors. He was of opinion that the land alone was worth $14 per square foot and on that basis by computation he ascertained the value of the land without the improvements; but in order to ascertain the value of the improvements he went through a theoretical process of reasoning which manifestly would not be applicable to all cases. He considered that the property should yield a gross rental of eight per cent on its valuation and he assumed that the rent reserved was the reasonable rental and, therefore, capitalized it on an eight per cent basis and concluded that the result thus attained would show the market value of the premises as a whole, and from that he deducted what he considered to be the market value of the land at $14 per square foot and concluded that the remainder thus obtained showed the value of the improvements. It is manifest that the correctness of that process of reasoning depends primarily on whether the rent reserved should net a landlord eight per cent on the value of the premises and whether it is and will be the fair annual rental value for the use of the premises, not only for the time being but for a considerable time to come. The fact that a tenant has agreed to pay a specified annual rental for a short period, as here, does not prove this. It would seem that evidence based on general rentals of similar property in the neighborhood would

be more cogent evidence of the actual rental value and as to that there was no evidence before the commissioners reopened the hearing. An expert on the value of machinery called by the city testified, in substance, that the market value of the machinery taken was only $3,497.20. It appears that the commissioners personally inspected and viewed the property many times.

It was the duty of the commissioners first to determine the market value of the property taken at the time title thereto vested in the city and the damages to the remainder of the parcel in consequence of being separated from the parcel as a whole; and the total of the awards made for the parcel could in no event exceed the two amounts thus to be ascerrained. (*Matter of City of New York* [*Delancey Street*], *supra.*) Were it not for the lease this would have ended the duties of the commissioners with respect to awards for this parcel; but proof having been made that this lease was outstanding and evidence having been offered with respect to the value of the lease for the unexpired term, it became the duty of the commissioners to determine its value and to deduct the amount thereof from the total of the awards for the parcel as a whole and to award it to the tenant. (*Matter of City of New York* [*Delancey Street*], *supra.*) Whether for some unexplained reason they failed to do this originally, or whether they were of opinion that the lease had no value over and above the rent reserved, does not appear. But when objection in that regard was interposed to their tentative report they reopened the hearing and this they were authorized to do (Greater N. Y. Charter [Laws of 1901, chap. 466], §§ 981, 984, as amd. by Laws of 1906, chap. 658, and Laws of 1909, chap. 394; now §§ 1011, 1013, as added by Laws of 1915, chap. 606);* and after hearing the further testimony offered and counsel for the respective parties they made the new awards as already stated. On the rehearing the tenant called a witness not sworn on the original hearing. He testified that the fair rental value was $11,500 per annum and the fair market value of the lease for the unexpired period was $9,000 and that seven per cent gross rental would be a

---

* See Laws of 1915, chap. 606, §§ 1, 3.— [REP.

First Department, April, 1921.          [Vol. 196

reasonable income for the property.   He was cross-examined by the city but not in behalf of the executors, although the attention of their counsel was specifically drawn by the commissioners to this point at the time and an opportunity for such cross-examination was afforded.   The witness showed familiarity with the prevailing rate of rentals for similar property in the neighborhood and his opinion to the effect that the rental value of this property was thus considerably greater than the rent reserved in the lease was largely predicated thereon.   The record shows that some of the witnesses indulged in theories with respect to determining the market value of the land and of the buildings and of the lease for the unexpired period which would have rendered their testimony incompetent as direct evidence but which might properly have been drawn out on cross-examination to ascertain the basis on which their opinions were predicated and to test the value thereof; but the record is barren of any evidence tending to show that the commissioners proceeded on any erroneous theory or principle or on any principle other than those correctly laid down in *Matter of City of New York (Delancey Street) (supra)*.   It is to be inferred that after taking this additional evidence and hearing further arguments, the commissioners determined and allowed their determination to become known, to award the tenant $5,000 and to reduce the award originally made to the executors by $2,000, and evidently as a matter of precaution they issued an order to the executors to show cause why that should not be done. On the return of the order to show cause all parties in interest appeared.   It was asserted at the outset by counsel for the executors that the commissioners had determined the total valuation as $124,285 and that they had " capitalized " this at seven per cent, making a rental value of $8,700, by which was doubtless meant that an income of seven per cent on that valuation would require a rental of $8,700, and that his understanding was that the rent reserved being greater than that amount, no award was made to the lessee and that as a result of the rehearing the commissioners had increased the total value of the property to the extent of $3,000.   One of the commissioners expressed disagreement with part of this statement and none of them acquiesced in any of it; and

the chairman answered it by stating that the commissioners had met and considered the objections interposed by the tenant to their failure to make an award to it and had heard and considered the additional evidence offered in behalf of the tenant and based their final award to the tenant thereon. Counsel for the executors in discussing the matter with the commissioners indulged in the assumption that the awards had been arrived at as the result of calculations based on the capitalization of rentals and claimed that in the case of the award to the executors, the capitalization was on the rent reserved and in the case of the award to the tenant, it was on an assumed rental value per annum of $10,050. It was not required that the original award should be separated so as to show separately the award made for the land and for the improvements and for the damages to the remainder; and presumably it did not so show; but on the rehearing counsel for the executors asserted that the commissioners ascertained that the valuation of the parcel as a whole was $124,285. To this one of the commissioners replied as follows: " I do not know about the $285. I haven't any such figure. I figure that the land in the original was $88,800 and I figure that the building was $36,000," and said that his memorandum showed that they considered that the total value was $124,800. At this point counsel for the executors asserted that the commissioners found that the annual rental value was $8,700 and that they had capitalized that at seven per cent and thus arrived at said total valuation, but the same commissioner thereupon remarked, " I haven't any notice of that," and the other commissioners said nothing. Counsel for the executors further stated that the effect of the new finding by the commissioners that the total value was $3,000 more than that originally found by them was to increase the annual rental by about $200 per annum, which would make it $8,900 per annum or $150 per annum more than the rent reserved which would give the value of the unexpired term of the lease as about $550. He did not so state, but evidently his theory was that a fair return on the additional valuation of $3,000 would have added to the rental valuation about $200 and on that theory he asked how, therefore, could the tenant be awarded $5,000. Thereupon the chairman of the com-

mission stated that the owner of the lease introduced testimony with respect to the value of the leasehold and the value of all leaseholds in the vicinity and the rent reserved for similar property in the immediate neighborhood and that the attention of counsel for the executors was called to this testimony and an opportunity offered for cross-examination but that the executors did not avail themselves of such opportunity and that the commissioners after due deliberation awarded the lessee damages in the sum of $5,000 and increased the award for damages to the whole parcel by $3,000.  Counsel for the executors thereupon stated that if the award to the tenant was correct, " it would calculate that the rental value of the premises were approximately $1,300 a year over and above the rent reserved in the lease " and that the lease had three and two-thirds years to run and the rent reserved was $8,750 " which would give a rental value to those premises of approximately $1,050 a year." The record does not disclose what impression this statement made on the commissioners and it is too indefinite to be made the basis of any assumption with respect to what was meant.  Counsel for the executors thereupon further correctly contended that the rule was that the award to a lessee must be confined to the rental value over and above the rent reserved; and he further asserted without pointing out any evidence or theory in support thereof that if the damage to the lessee is right, the proposed award to the executors was from $20,000 to $25,000 too low.  He also asserted, without anything upon the record to sustain it, that the original capitalization of the building by the commissioners in the preliminary report was seven per cent on a rental value of $8,700, but on the new rental value it would be about nine per cent; and stated that the executors objected to any decrease in the amount to be awarded to them and admitted that the tenant was entitled to an award of $550 but objected to the award of $5,000. This is the substance of what the record shows so far as material to the points presented by the appeal.  It needs no argument thereon to show that the record affords no possible basis for inference that the commissioners have proceeded in disregard of any legal principle.  The criticism of this record is predicated on the erroneous assumption that

there is some fixed rule of law by which the market value of property condemned for public purposes 'is to be determined by capitalizing the rent reserved in a lease thereof or what experts consider the reasonable rental value, and that there is a fixed rule with respect to the percentage upon which such capitalization should be made; and conversely that the fair rental value for the purpose of determining the value of a lease may be obtained by assuming that the rental should return a certain percentage on the value of the property, and that the commissioners attempted to apply those theories here but did not apply them in the same manner with respect to the executors and the tenant.    The answer to those contentions is that they are not borne out by the record and that there is nothing to show that the commissioners did not determine the entire amount of damages on the proper theory and basis and did not then determine the value of the unexpired term of the lease over and above the rent reserved and make an award to the tenant therefor on the proper theory and basis.

It follows that the order in so far as it confirmed the award as to the leasehold interest should be affirmed, with ten dollars costs and disbursements to the respondent The Duval Company, and in so far as it denies the motion for the confirmation of the award to the executors it should be reversed, with ten dollars costs and disbursements, and the award confirmed, with ten dollars costs.

DOWLING, PAGE, MERRELL and GREENBAUM, JJ., concur.

Order affirmed as to award for leasehold interest, with ten dollars costs and disbursements to respondent The Duval Company, and reversed, with ten dollars costs and disbursements, so far as it denies motion for confirmation of award, to owners of the fee and building, and said award confirmed, with ten dollars costs to appellant against respondents Welsh and others, as executors, etc.