ARLEN OF NANUET, INC., et al., Respondents, v. STATE OF NEW YORK, Appellant. (Claim No. 39972.)

BERNARD S. SIEGEL et al., Respondents-Appellants, v. STATE OF NEW YORK, Appellant-Respondent. (Claim No. 40099.)

Third Department, December 31, 1968.

*Louis J. Lefkowitz, Attorney-General* (*Ruth Kessler Toch* and *Julius L. Sackman* of counsel), for appellant and appellant-respondent.

*David Marcus* and *William S. Gray* for Bernard S. Siegel, respondent-appellant.

*Skinner & Bermant, Leddy & Raber* (*Bernard L. Bermant* and *Carl J. Moskowitz* of counsel), for Arlen of Nanuet, Inc., respondent.

AULISI, J. These are appeals, as limited by the briefs from judgments in favor of claimants, entered September 15, 1966, upon a decision of the Court of Claims. An order directing a joint trial of the claims was affirmed on a previous appeal. (22 A D 2d 722.)

Since the facts have been fully detailed in the reported decision of the Court of Claims (*Arlen of Nanuet v. State of New York*, 50 Misc 2d 934), they will be only summarized here. The claimant, Arlen of Nanuet, Inc., is the assignee of Banner Holding Corporation which, on May 10, 1961, the day of the appropriation, had a 25-year lease of the subject parcel with the fee owners. The agreement called for annual rentals of $30,000 in the first year and $61,250 thereafter. The tenant had an option to pur-

chase the land at the end of 10 years for $31,000 per acre plus the balance due on any mortgages. E. J. Korvette, Inc. had obtained a sublease from the tenant, which obligated the tenant sublessor to erect a large discount department store, super-. market, patio shop, and parking area, after which a yearly rent of $285,000 was to be paid. The same parties had also entered into two other subleases calling for nominal annual rentals; it was contemplated that one of the included parcels would be released to the tenant sublessor for the construction of satellite furniture and tire stores. After the taking by the State, the subleases were transferred intact to a neighboring parcel (here-inafter referred to as the "built-on" site) owned by Arlen Operating Corporation and leased to Arlen of Nanuet, Inc. The Korvette and satellite buildings were constructed as planned, and the shopping center was put into operation.

The Court of Claims found a before value of the landlords' interest of $823,610, an after value of $121,000, and total damages of $702,610. It computed the value of the leasehold at $875,000 and made an award to Arlen in that amount.

### THE LANDLORDS' CLAIM

In determining the value of the lessors' interest, the court properly chose to capitalize the rent reserved in the main lease and to add the estimated value of the optioned reversion (*Wer Realty* v. *State of New York*, 26 A D 2d 732). The appraisers for the landlords and the State had made similar computations, with the former using a 6% capitalization rate and the latter a 9% rate. The court employed a 7% rate. The State asserts in substance that this finding is invalid to the extent that it is made in reliance on the landlords' appraisal, on the ground that there was no support for the 6% figure.

The determination of a discount or capitalization rate is a factual question and the finding ought not to be disturbed absent the commission of an error of law (*St. Agnes Cemetery* v. *State of New York*, 3 N Y 2d 37, 47). The trier of fact is not required to select one rate or the other given by the expert witnesses, but may make a finding within the range of testimony (*Matter of City of New York* [*Maxwell-Hand*], 15 A D 2d 153, 161, affd. *sub nom. Matter of City of New York* [*Lincoln Sq. Slum Clearance Project — American Ice Co.*], 12 N Y 2d 1086 and *sub nom. Matter of City of New York* [*Lincoln Sq. Slum Clearance Project — Schnurmacher Corp.*], 16 N Y 2d 497). The landlords' expert was well qualified by training and experience to decide upon an investment rate, the selection of which depends in large part on

the insight of the appraiser. He based his estimate upon factors such as the terms of the lease, the topography of the land in question, the history of the area, the anticipated growth of the area, and a study of the rates for United States bonds. There is no uniformly accepted method of arriving at a capitalization rate and we cannot say as a matter of law that the testimony in question was lacking in objective support so as to be incompetent for use in this proceeding. The capitalization rate and the ultimate values are well within the range of testimony and should be affirmed.

### THE TENANT'S CLAIM

In evaluating the interest of the lessee, the Court of Claims first capitalized the income of the " built-on " site to find land income of $155,656, which it converted to land value of $2,220,000. It then treated the land income as the economic rent for the subject parcel, and computed the value of the lease by capitalizing the excess of this amount over the contract rent and incorporating the value of the option to purchase. The resulting $944,135 was considerably less than the $1,396,390 which would have been obtained by subtracting the landlords' interest from the unencumbered fee value, a discrepancy which was never explained, and the sum was further reduced to $875,000 because of specified uncertainties in the lease.

We reject at the outset the argument by the State that the terms of the condemnation clause in the lease have the effect of depriving the lease of all market value, and the amended allegations in the State's reply brief that an interpretation of the provisions of the clause is necessary in order to prevent a double recovery. Agreements of this sort concern only the apportionment of the award between landlord and tenant, and they may not be employed in computing the market value of the lease (see, generally, *Matter of City of New York [Allen St.]*, 256 N. Y. 236, 242–243).

Also unacceptable is the contention that the lessee was not damaged because it was able to secure an equally advantageous lease on other property. Just as subsequent acquisitions of land outside the bounds of the appropriated parcel do not affect an owner's right to damages (*St. Patrick's Church* v. *State of New York,* 30 A D 2d 473, 475), so also the rights of a tenant should not be prejudiced by its success in obtaining a new contract of equivalent value after the date of the taking.

The State properly contends that as a general rule, the courts will first calculate the unencumbered fee value and then carve out the respective interests of the parties (*Great Atlantic &*

*Pacific Tea Co.* v. *State of New York,* 22 N Y 2d 75, 84). It is not, however, incorrect to determine the separate interests, without prior reference to the over-all value, as long as the end result is the same as under the more traditional method (*Matter of Trustees of N. Y. & Brooklyn [Clark],* 137 N. Y. 95, 97). In the previous case, the court computed the unencumbered fee value and then made separate awards which do not add up to that amount. Yet, since the total of the awards is not larger than the over-all fee value, the State has not been prejudiced and this inconsistency cannot form a basis for reversal.

The State further argues that by capitalizing the income of the " built-on " site and applying the result to the subject parcel, which was vacant at the time of the appropriation except for a dilapidated structure not considered by any of the appraisers, the court has determined residual land value by the capitalization of hypothetical profits from a nonexistent business, a method of evaluation which has been disapproved (see *Levitin* v. *State of New York,* 12 A D 2d 6; *Wer Realty* v. *State of New York,* 26 A D 2d 732, *supra*). The income and cost amounts employed by the court, however, were not presumed or hypothetical but were the actual figures for the " built-on " site. Since the transactions on that land were virtually identical with those which would have occurred on the subject property except for the taking, they are especially pertinent as showing that earnings were " clearly to-be-expected " (*St. Agnes Cemetery* v. *State of New York, supra,* p. 45) on the day of the appropriation. (See, also, *Crimswal Realty Corp.* v. *State of New York,* 27 A D 2d 350, mot. for lv. to app. den. 20 N Y 2d 646.) Therefore, in this instance, the court was not in error in deciding that capitalization of income was a relevant method of appraisal and that it could be applied to actual amounts obtained from the " built-on " site.

Nevertheless, we find that in transferring the figures for the " built-on " site to the subject property, neither the court nor the tenant's appraiser made an allowance for the fact that on the day of the taking, the subject land was virtually unimproved and was not fully subleased. The values derived from the " built-on " parcel, while usable in discovering the value of the subject lease, could not be employed without adjustment because they represented the value which the site would have had after all improvements had been completed and all subleases obtained. The tenant's award could be no larger or smaller than the reasonable value of its interest as of the precise time of the appropriation (see, generally, *Matter of City of New York [Wet-*

more], 272 App. Div. 826, 827; *Matter of City of New York [127–129 Water St. Corp.-Gillies Coffee Co.]*, 19 A D 2d 44, 49). As stated by the Court of Appeals in *Levin* v. *State of New York* (13 N Y 2d 87, 91): '' What the purchaser would pay for the property would undoubtedly be influenced by the extent to which the property had been exploited ''. The amount for which the instant lease could have been sold or assigned while the land was still vacant and only partially subleased represents a similar situation. Therefore, the Court of Claims could find, as it did, that the economic rent of the subject parcel when fully improved and fully subleased, would have been $443,114. The contract rent at the time of the taking, however, was $285,000, the rental on the Korvette sublease.

Thus it is necessary to alter the award, and this result may be achieved by making a direct allowance for the extent of the development on the day of the appropriation. The sum of $158,114 or about 40% of the total was uncertain economic rent at the time of the appropriation. Upon the record before us, which shows the parcel approximately 60% subleased at the time of the taking, it is our opinion that the award should therefore be reduced 40% to $525,000 to reflect the existing circumstances.

Under more traditional methods, the award may be modified by abstracting from the record those values which represent the price which would be paid by a prospective purchaser of the lease. The estimated cost of the buildings called for in the Korvette lease and designed at the time of the taking was $1,978,486, and the net annual rents under the assured subleases amounted to $285,020. The Court of Claims found that 9.5% was the fair recapture rate for building costs and, accordingly, $187,956 should be deducted from the net rental, leaving $97,064 as the income attributable to land. Capitalizing this figure at 7%, as did the trial court, we arrive at $1,386,629 as the before value of the land. The value of the lessee's interest is then computed by subtracting the before value of the landlords' interest, or $823,610, from the total before value, and is found to be $563,019.

It is our conclusion that the result reached under the first alternative above more accurately reflects the value of the lease and that the award to the tenant should therefore be reduced to $525,000. The judgment in the landlords' case (Claim No. 40099) should be affirmed, with costs.

The judgment in the tenant's case (Claim No. 39972) should be modified, on the law and the facts, by reducing the award to $525,000 and, as so modified, affirmed, with costs.

HERLIHY, J. P. (concurring in part and dissenting in part). As to the judgment in favor of Bernard S. Siegel et al., I concur with the majority as to the result.

As to the claim of Arlen of Nanuet, Inc. et al., I disagree with the finding of the majority that the sublease to Korvette indicated any economic benefits inuring to the leasehold interest of this claimant.

Upon the present record the case falls squarely within the dissenting opinion of the Appellate Division in the case of *Levin* v. *State of New York* (17 A D 2d 335, 338, affd. 13 N Y 2d 87). That the interest of this claimant was merely incidental to the value of the land encompassed in the lease is factually demonstrated by the reliance of both parties herein on the so-called " built-on " site. The tenant simply moved the sublease across the road, the economic benefits thereunder remaining intact to it.

Contrary to the situation of the fee owner, Arlen suffered no monetary damage because of the abrogation of the sublease since said sublease was not operative at the time of the appropriation. Likewise, Arlen suffered the loss of no improvements or fixtures. The present record does not establish any land value which inured to the benefit of Arlen, the sole value of its interest lying in the business aspects of its sublease to Korvette. As stated by the Court of Claims in its decision, " Without Korvette, Banner [Arlen] would hardly have had any interest in the subject land or the ' Built-On Land.' "

The enhanced value of the unencumbered land is properly part of the claim of the owner, as found by the court, and represents full and just compensation. The record is crystal clear that the leaseholder moving across the road retained all of its potential profits under the terms of its lease with Korvette. " Just compensation " requires a holding that Arlen is not entitled to receive the full financial benefits from its sublease and also receive compensation for the fictional loss of such benefits. In *Matter of Board of Water Supply of City of New York* (277 N. Y. 452, 456), after setting forth a general rule, the court stated: " But even that must yield to exceptional circumstances, for ' each case necessarily involves different facts and must be considered by itself ' ". In *Boston Chamber of Commerce* v. *City of Boston* (217 U. S. 189, 194), the court stated that the city cannot " be made to pay for a loss of theoretical creation, suffered by no one in fact ".

The judgment in favor of the leaseholder, Arlen of Nanuet, Inc., should be reversed, on the law and the facts, and the claim dismissed.

REYNOLDS, J. (dissenting). I agree with Justice HERLIHY's dissent as to reversal of the tenant's judgment and dismissal of his claim (No. 39972) for the reasons he assigns and additional reasons in this memorandum. As to the fee owners' judgment, (Claim No. 40099) it is my opinion that this judgment should be reduced to $559,000 or reversed and a new trial granted.

A short time before the vesting of title in the State (May 10, 1961), the fee owners completed the assemblage of the parcel of 26.783 acres out of which the appropriated parcel of 16.009 acres was taken. This vacant unimproved land cost the fee owners $247,800 or about $9,250 per acre. The court's valuation of this land, upon which no physical changes had taken place, of $84,053 per acre as of May 10, 1961 (the date when it must be evaluated) is shocking. It was more than nine times what the fee owners paid for the land only a short time before. It represents an escalation in value of this parcel of more than 900% from $247,800 to $2,251,191. Judge FULD's opinion in *Levin* v. *State of New York* (13 N Y 2d 87) sanctioned the receipt into evidence of a lease, the prospective net rental income, the plans to develop the subject property and the evidence relating to construction costs, to be considered as a factor along with market value and other data in determining enhancement. In other words that it was admissible as some evidence of value but could not serve as the sole basis of the award as was attempted here. (Cf. *Levitin* v. *State of New York,* 12 A D 2d 6, mot. for rearg. den. 13 A D 2d 611; *Salzberg* v. *State of New York,* 24 A D 2d 664, affd. 18 N Y 2d 965; *Karell Realty Corp.* v. *State of New York,* 30 A D 2d 897; *City of Binghamton* v. *Rosefsky,* 29 A D 2d 820; *Wer Realty* v. *State of New York,* 26 A D 2d 732.)

In my view the only evidence which is sensible and practical as to the fee owners' claim and followed the decisional law, was that of the State's appraiser. He recognized that the subject assembled parcel had plottage value in excess of the $247,800 cost for a higher potential use, and in consideration of the market value data, sales data and rent data testified that the parcel had a value of $400,000 on the market value approach. However, he took into consideration the headlease, supported by the sublease to Korvette and arrived at a figure of $680,000 as the unencumbered fee value. This represented a substantial enhancement over the figure of $400,000 obtained by the market value approach and nearly one half million over the cost price. It seems to me to be a rather handsome enhancement, all in compliance with the rule enunciated by the Court of Appeals in *Levin* v. *State of New York* (*supra*). Reducing this $680,000 by the after value found

by the trial court $121,000, it becomes $559,000 which is the State's contention of the proper figure for this claim. I agree.

It seems necessary to discuss another error and that is the use by the trial court of the capitalization rate of 7%. The State contends that this is unfounded and arbitrary, with which I must agree. The trial court reaches this as between the claimant's contention of a 6% capitalization rate and that of 9% by the State's appraiser. Claimants defend the court's use of a 7% rate as within the range of the expert testimony and that the selection of the capitalization is a question of fact, citing *St. Agnes Cemetery* v. *State of New York* (3 N Y 2d 37, 47). That is all well and good, but here the testimony of the claimants' expert as to the proper capitalization rate is entitled to no weight, because his opinion is wholly conclusory, subjective and based only on his judgment and without factual support; therefore, there is no question of fact for the court to decide and no range of testimony. The State's expert chose his rate on the basis of a comparable lease and verified that rate using the " component rate method " in which the appraiser sets up component parts of the capitalization rate to reflect the various qualities of investment, assigns a rate to each and sums them up to arrive at the proper rate. It was the only rate based on factual support. We have held that the opinion of an expert as to ultimate value, without factual support and based wholly on his experience, is totally devoid of probative force and cannot be used to sustain an award (*Fonda, Johnstown & Gloversville R. R. Co.* v. *State of New York*, 29 A D 2d 240). We have applied the same rule to an expert's opinion as to highest and best use (*O. & W. Lines* v. *State of New York*, 30 A D 2d 998). And, perhaps, more closely in point is our decision in *Fleetwood Maple Corp.* v. *State of New York* (28 A D 2d 1026). In that case claimant's expert testified as to value, and stated he used the income approach; but, when asked to explain how he arrived at his opinion, merely replied " I did it in my head." We held this testimony to be a " conclusory ultimate valuation " and insufficient to sustain an award. (Cf., 1 Orgel, Valuation under Eminent Domain [2d ed.], § 185, p. 716) which cites *Matter of City of New York* [*Seventh Ave.*], 196 App. Div. 451), as indicating that " opinion testimony as to proper rates of capitalization, unless well supported, will not suffice to ground a reversal of commissioners' awards."

The need for factual support for the choice of a capitalization rate is well demonstrated here. Using a 6% capitalization rate, claimants' expert computed the value of the lease at $859,000.

The trial court used a 7% rate to reach a value of $823,610. The State's appraiser, using a 9% rate, arrived at $680,000.

Even if we were to accord the opinion of claimants' expert as to the proper capitalization rate some weight, *the trial court's choice of 7% is without factual support*. Claimants' expert testified that the 6% rate represented the going rate of return on real estate investments where the income was secured by leases to tenants with a " A-1 " rating. The testimony shows that the lease in question was subject to more than the usual risks. In the first place, the landlord's reversionary interest was to be subordinated to a mortgage to be secured by the tenant. Secondly, the sublease to the " A-1 " tenant, Korvette, was subject to cancellation on short notice if the tenant failed to complete the proposed buildings and other improvements on schedule. The only testimony as to the additional return investors would demand to compensate for the " risk factor " was given by the State's witness, and he said it would increase the rate to 9%, and this was the only probative evidence as to the proper rate.

As to the tenant's claim, in addition to the reasons set forth by Justice HERLIHY, the lessee's appraiser derived his value solely on the basis of the capitalization of the income from hypothetical structures. With sound factual support the State's appraiser testified that the economic rent of the condemned site did not exceed the contract rent and, therefore, in accordance with this familiar rule, the tenant suffered no damage by the termination of its lease.

In sum, the tenant's judgment should be reversed and his claim dismissed, and the judgment of the fee owner should be modified and reduced to the sum of $559,000 or, in the alternative, a new trial should be granted.

STALEY, JR., and GABRIELLI, JJ., concur with AULISI, J.; HERLIHY, J. P., concurs in part and dissents in part, in an opinion; REYNOLDS, J., dissents, in an opinion.

Judgment in Claim No. 40099 affirmed, with costs.

Judgment in Claim No. 39972 modified, on the law and the facts, by reducing the award to $525,000 and, as so modified, affirmed, with costs.