NIAGARA FRONTIER BUILDING CORP., INC., Respondent-Appellant, v. STATE OF NEW YORK, Appellant-Respondent. (Claim Nos. 42742, 42760A, 43599, 44344.)

Fourth Department, December 4, 1969.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Augustine A. Mosco* for respondent-appellant.

GABRIELLI, J.  The State appeals from a judgment in favor of claimant, entered June 25, 1968 (COOKE, J.) awarding damages caused by a " temporary *de facto* appropriation " resulting in a loss of rentals of its property.  Claimant cross-appeals on the ground of inadequacy of the award.

When this case was before us on a prior appeal (27 A D 2d 329) we stated that "we neither directly nor inferentially express any opinion as to claimant's right to recover for the whole or any part of its alleged loss of rentals " (p. 332).  We remitted the matter because of a paucity of findings and a failure of demonstrable precise legal theory upon which the award was made.

Claimant is the owner of a six-story commercial building in the City of Buffalo, which was largely rented on month-to-month leases.  Following a series of newspaper articles concerning the possible construction of a new Federally-funded highway which might affect its lease, one of claimant's tenants (Mobile Library) consulted an Assistant Engineer in the employ of the State Department of Public Works, seeking information as to the progress of the building program.  As the result of the conversation, the tenant asked for a letter of confirmation which he

received in March, 1961 stating that the design of the proposed highway was "98% completed.", that it was expected "a contract would be let early this year, for this construction", and that the information was important to the tenant "because it means the removal of this library building and its contents".

The letter was addressed only to Mobile Library who presumably relayed its contents to the claimant, who in turn then advised the other tenants to move, and by October, 1962 all tenants had left. No charge is leveled that the Assistant Engineer made any false statements for it appears he was justified in reaching the conclusion he did since he could not reasonably anticipate a threatened withdrawal of funds by the Federal Government, which had originally agreed to pay 90% of the cost of construction of the highway, aside from the cost of acquisition of lands which was to be borne by the State. However, the project was delayed because of a dispute between Federal and State officials as to whether tolls should be charged by the State for users of the new highway. It was not until July, 1963 that the State was informed that funds might not be available. There followed a long series of negotiations between the State and Federal Governments culminating in a final agreement in May, 1966, whereby the Federal Government would proceed with its original plan of funding a part of the project. Claimant's property was then formally appropriated by the filing of maps in June, 1966 and a trial of that claim is now pending.

The award here made by the Court of Claims is for a "temporary de facto appropriation". If we are to assume there had been a de facto appropriation (an assumption in which we may not indulge), it could not under the circumstances here present, be a "temporary" taking since the building, when closed in October, 1962 never reopened between that date and June 13, 1966, the date of the de jure appropriation.

It is apparent that by its letter of March 3, 1961 the State expressed its intention to condemn the property. However, this act would not cast the State in liability upon the theory of a taking for there was no appropriation of the property, in its accepted legal sense. There can be no direct recovery for a manifestation of an intent to take (Waller v. State of New York, 144 N. Y. 579, 599) or a threat to condemn (2 Nichols, Eminent Domain [3d ed.], § 6.1[1]). Claimant does not assert any claim for negligent misrepresentation. Rather it rests its claim for a recovery for the loss of stated rents because of an "appropriation" of its property. In any event, if we were to construe the claim as based on any theory of negligence, it was not timely filed. (Court of Claims Act, § 10.) Even upon such a theory,

the proper measure of damages would be the loss of rental *value* (of which there was no proof) and not merely for the loss of the stated rents.

In sum, there was no appropriation, temporary or otherwise, prior to the *de jure* taking on June 13, 1966, which would permit an award of damages therefor. However, claimant is not without relief. The State does not seriously dispute that its actions may have caused the tenants to move and while the State cannot be held liable for any alleged appropriation prior to June 13, 1966, it must respond in damages for any actions on its part which may have operated to decrease the value of the property in question. Thus, when the damages are evaluated on its claim for the *de jure* appropriation, the State should not be permitted to benefit from any loss sustained by claimant as the result of the State's acts beginning in 1961. To put it another way, claimant's property should be evaluated not on its diminished worth caused by the condemnor's action, but on its value except for such "affirmative value-depressing acts" of the appropriating sovereign. (*City of Buffalo* v. *Irish Paper Co.*, 31 A D 2d 470.) In such case, compensation shall be based on the value of the property at the time of the taking if it had not been subjected to the debilitating effect of the threat of condemnation.

The judgment of the Court of Claims should be reversed and the claims dismissed, without costs.

MARSH, J. P., MOULE, BASTOW and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts without costs and claims dismissed.