In the Matter of CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property for Clinton Urban Renewal Project in the Borough of Manhattan. FRANKLIN RECORD CENTER, INC., Appellant.

First Department, July 10, 1979

### APPEARANCES OF COUNSEL

*M. Robert Goldstein* of counsel *(Samuel Goldstein & Sons,* attorneys), for appellant.

*Morris Einhorn* of counsel *(L. Kevin Sheridan* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for respondent.

### OPINION OF THE COURT

MARKEWICH, J.

The issue before us is whether, in this proceeding in eminent domain, a claimant using a unique idea to bring about increased rental returns is to be deprived of the benefit of that idea by having a lesser hypothetical rent roll substituted for the actual rent roll. The subject 10-story, loft-type building was acquired in 1964 by the claimant from the City of New York for $340,000. For the next 10 years, it was used for storage of records and office equipment by approximately 100 tenants. The city's theory advanced in this condemnation proceeding to reacquire its formerly owned property is that the actual rent roll is to be ignored, and, as it seems, that an artificial rent roll must be substituted therefor, calculated from figures provided by other similar buildings in the neighborhood, not operated in the same manner as the subject premises. Special Term has adopted respondent's theory. We disagree, and remand to have the actual rental figures considered as a factor in ascertaining value of the condemned property. Respondent's valuation was based upon the purchase price paid by claimant, and the 1969/1970 tax assessment of $305,000, together with a hypothetical rent roll arrived at after "carving" away the higher rent charged to and paid by tenants for whom claimant had, in effect, provided custom space precisely calculated to fit the exact needs of the tenants for storage space by the use of movable partitions. This unique entrepreneurial device actually saved tenants money by complete elimination of waste space over and above actual needs. At the same time, it resulted in a higher rate per square foot to the landlord. The city claimed, however, that the actual

rent return was inapplicable because the claimant was free to use its idea wherever it moved, and the city had not deprived claimant at all of continued use of the device. It had not, it argued, bought the idea along with the building. Special Term adopted respondent's theory and agreed that the value of the subject property, compared to other loft buildings in the vicinity was $635,000 instead of the $1,100,000 asked by claimant as based on the actual rent roll. Other rents nearby were $1.75 to $3 per square foot; claimant's rate was $8 to $9. The difficulty with the city's thesis that it had not bought claimant's idea is that it fails to consider at all the hard fact that it has deprived claimant of the use of that idea at the place where installed by claimant and in highly successful operation at the time of taking.

The adjustment in the rent roll made by respondent's experts is based on sheer speculation and not on fact. Indeed, the opinion of the experts as to value actually translates into an opinion as to what they believe the law should be. It is not supported by the actual facts in the record. Rental figures usually do not present an issue of basic fact, nor should they here, readily ascertainable as they are from the records. The real figures should not be ignored, as they have been here. (See *Hicks Realty Assoc. v State of New York,* 34 AD2d 866.) We find nothing whatever in the record to sustain an inference that claimant's rent figures have been inflated by income from other businesses in the same ownership. Nor is there anything out of the ordinary in the sharing by several businesses of certain services as long as—and we believe this to be the situation here—they are charged to each beneficiary in appropriate proportion. In short, there is nothing in the record to indicate that the rental return from the subject building is other than that claimed.

We find claimant's insistence on the use of correct rental figures to be justified. That it has been increased by use of a unique idea does not bar it from consideration any more than if it had come about through excellent lighting, location, commodious elevators capable of raising loaded trucks, air conditioning, etc. Better and more desirable facilities always command higher rents.

■ Due process in eminent domain has been succinctly summarized: "The owner whose property is taken for public use is to be justly compensated for damages sustained. He is to be made whole, as well off after the taking as he was

before." *(Matter of City of New York [Fourth Ave.],* 221 App Div. 458, 459.)

"One who is deprived of his property by eminent domain has the right to prove every element that can fairly enter into the question of value. In the determination of what is just compensation, there is no single element which is controlling, and it is proper to consider all factors indicative of the value of the property. The court must consider those things which will be present in the minds of a willing buyer and a willing seller." (19 NY Jur, Eminent Domain, § 140, p 353.) What willing buyer could reasonably overlook the actual rent roll and its cause? And what seller would willingly part with the property at a figure which did not consider its actual rent roll?

■ "In the determination of the fair market value, the condemnee is entitled to have the appraisal based on the highest and best available use of the property irrespective of whether he is so using it". *(Keator v State of New York,* 23 NY2d 337, 339.)* Claimant is actually putting the building to its highest and best use. The fact that its neighbors are not doing likewise should not deprive this claimant of the benefits of its ability to find an even higher and better use than envisioned by the others.

Fourth separate and partial final decree entered October 18, 1976, Supreme Court, New York County (MANGAN, J.), awarding claimant $635,000 and interest for acquisition of its property on June 1, 1970 in eminent domain proceedings, should be reversed, on the law and the facts, and remanded for further proceedings not inconsistent herewith, without costs.

SANDLER, J. (dissenting). I am in agreement with Special Term's determination for the reasons set forth by that court as well as for the reasons presented in Mr. Justice BLOOM's dissenting opinion. There is a substantial basis in this record for Special Term's conclusion that the rental income derived by claimant from the property in question, to the extent to which it exceeded that derived from comparable loft properties, would not be reflected in an unforced sale of the property.

The reality seems to me quite different from that portrayed

---

* We certainly do not overlook the fact that *Keator* dealt with a "specialty". But the same principles apply. In any event, while claimant's property comes close to being a specialty, it may be treated of, as done here, by appropriate application of basic principles.

in Mr. Justice MARKEWICH's opinion. Claimant is engaged in the record storage business. It has conducted that business in various buildings, in addition to the one here, all apparently typical loft buildings shaped to the exigencies of claimant's business. Claimant's business is linked intimately in a variety of ways in the operations of what in effect is its parent corporation, a major moving and warehousing corporation. It is apparent that the business may be easily transferred, at limited expense, from one building to another.

The income derived from the premises in question has very little relationship to any peculiar characteristics of the building. Rather, the income depends upon claimant's standing in its specialized area of activity and is closely associated with the resources, reputation, facilities and business following of its parent corporation. It seems unlikely that a potential buyer, not already established in the business or equipped with the special experience and resources comparable to that possessed by claimant and its parent corporation, would pay for the property in question a price keyed to the income that claimant had derived. It also seems unlikely that a competitor would undertake to pay such a price to claimant in the absence of a commitment not to compete.

Nor do I see any basis in this record for the apprehension that claimant is not being adequately compensated. Given the fact that plaintiff quickly acquired an alternative property to continue the very business that it had been conducting, it seems quite clear that claimant has received very adequate compensation for the loss that it in fact suffered.

The partial final decree appealed from should be affirmed.

BLOOM, J. (dissenting). I cannot agree with the majority that the decree here under attack must be reversed because of the utilization of an improper measure of damages by the trial court. Indeed, I am persuaded that the measure laid down by Trial Term is an appropriate one in the unique situation here presented.

It is axiomatic that the claimant is entitled to just compensation for the taking of its property (US Const, 14th Amdt; NY Const, art I, § 7, subd [a]; *McCoy v Union El. R. R. Co.,* 247 US 354). "Just compensation has been measured in cases of this kind by the fair market value of the property taken as of the date of the taking" *(Matter of Board of Water Supply of City of N. Y.,* 277 NY 452, 456; see, also, 4 Nichols, Law of

Eminent Domain [1978 ed], § 12.1; 1 Orgel, Valuation under the Law of Eminent Domain [2d ed], § 17). It is the general rule "that the fair market value is the price for which the property would sell if there was a willing buyer who was under no compulsion to buy and a willing seller under no compulsion to sell [citation omitted]. In the determination of the fair market value, the condemnee is entitled to have the appraisal based on the highest and best available use of the property irrespective of whether he is so using it" *(Keator v State of New York,* 23 NY2d 337, 339).

Here, apparently, the claimant was using the premises for its best available use, the warehousing of records. As is indicated in the majority opinion, it was able to obtain a higher return on this use than other premises in the same vicinity by utilization of a simple technique which enabled it to tailor space rented by a lessee. Thus, a lessee, because it paid only for the space actually used by it, would pay a total lesser rental even though it would pay a greater rental per square foot. In sum, the technique constituted a service rendered by the claimant to its tenants which is not compensable in condemnation. Thus, even though the service so rendered enabled the owner of the property to obtain a greater rental value per square foot, it did not change or alter the highest and best available use; that was and remained the warehousing of records.

The idea upon which the service is bottomed has not been taken by the city, nor has claimant been deprived of its use. It remains with claimant and, in all probability, will be rendered by it in the premises which it acquired in the general area after the instant condemnation. Hence, it is entitled to no compensation for the increased net income of the premises resulting from the service so rendered. It follows therefrom that a determination of market value, predicated on the capitalization of this enhanced net income would be improper.

Accordingly, I dissent from the holding which would include this item as a proper basis for determining fair market value.

MURPHY, P. J., and SULLIVAN, J., concur with MARKEWICH, J.; SANDLER and BLOOM, JJ., dissent in separate opinions.

Fourth separate and partial final decree, Supreme Court, New York County, entered on October 18, 1976, reversed, without costs and without disbursements, on the law and the

facts, and vacated, and the matter is remanded for further proceedings not inconsistent with the opinion of this court.