OPINION OF THE COURT
Meyer, J.
The compensation due a claimant in condemnation who was able, because its building had shelves and movable partitions and was leased for record storage, to obtain higher rentals per square foot than were obtainable for storage space in loft buildings not similarly equipped and rented is not limited by the sale value of such loft buildings. Absent evidence that the market value of a loft building with similar interior construction and similarly used is less than the value of claimant’s building determined by capitalizing the rental income actually received by claimant, the latter value is the proper measure of compensation. The decree appealed from and order of the *60 Appellate Division brought up for review should, therefore, be affirmed, with costs.
Claimant, Franklin Record Center (Franklin), owned a 10-story loft building located at 545-551 West 52nd Street in Manhattan which, on June 1, 1970, the city appropriated. Prior to the condemnation Franklin rented space to approximately 90 tenants for the storage of records and office supplies. Some rented entire floors; some rented smaller areas enclosed by movable partitions; some rented only shelf space in an open area. All, however, had three-to five-year leases, except that at the time of title vesting 12 of the then 89 tenants, because of the imminence of condemnation, did not sign leases. Because of the flexibility obtained through use of portable metal partitions and the availability of shelf space, tenants were able to rent only the area actually needed at any particular time and, therefore, were willing to pay Franklin a greater per square foot rental for its building than was generally paid to owners of loft buildings in the area used for different purposes.
The experts for both claimant and the city appraised the building by capitalizing net rental income. They determined rental income differently, however. Franklin’s expert, based on the rents actually received, found the gross rental income to be $203,000 and the value of the building to be $1,100,000. The city’s expert, concluding that only a portion of the payment made by each tenant constituted rent, the rest being in his view for service rendered, found the gross rental income to be $105,965 and the value of the building as a loft building to be $635,000. Special Term adopted the city’s view and awarded $635,000, but the Appellate Division, by a divided court, reversed on the law and the facts and remanded, finding Franklin’s use of the building to be its highest and best use and holding that it should not be deprived of that use because it was “an even higher and better use than envisioned by * * * others” (69 AD2d 111, 114). On remand, the city declined to offer any additional evidence and Special Term, finding the rental income to be as Franklin’s expert testified, awarded Franklin $1,100,000. That decree is now appealed to us pursuant to CPLR 5601 (subd [d]).
*61 The record does not sustain the conclusion that Franklin’s tenants purchased anything other than the right to occupy space in the condemned building during the term of their leases. The opinion of the city’s expert to the contrary was based solely upon his view that the building should be valued as a loft, rather than as the records storage building it was in fact rented as, because records storage necessarily required service to the tenants, because Franklin operated other record storage buildings and because Franklin’s principals owned a moving company and other related companies. He conceded, however, that he had never seen the leases between Franklin and its tenants, that he did not know which of the approximately 10 persons he had seen when he visited the premises were Franklin employees and which were employees of tenants, that he could not testify what services the tenants were getting, and that he had not examined the market to find out whether there were other enterprises running similar record centers. Absent any evidence that services were supplied by Franklin or any related company without the payment of reasonable compensation therefor over and above the rent, Franklin’s experience and reputation and its relationship with the other companies was simply irrelevant to the determination of the compensation to be paid. None of the leases was shown to include a right of the tenant to terminate in the event Franklin ceased to be landlord.
The measure of damages in condemnation is the fair market value of the condemned property in its highest and best use on the date of the taking (Matter of City of New York [Shorefront High School — Rudnick], 25 NY2d 146, 148; Keator v State of New York, 23 NY2d 337, 339). Here both sides agreed upon capitalization of net rental income as the proper measure of fair market value but differed as to the part played by the actual use in the determination of rental income. The weight of the evidence supports the conclusion of the Appellate Division majority that the highest and best use of the property in question was its actual use as a record storage facility and that the entire income from that use was rental, not business, income. Indeed, there is no evidence in the record to support the contrary conclusions of the city’s expert, nor does it change *62 the nature of the income from rental to business that after the condemnation of the building in question Franklin was able to establish a similar center in another building and that some of the same tenants leased space in the new building. That being so, and there being no claim by the city that Franklin’s actual receipts were a temporary aberration (cf. Matter of City of Mount Vernon [Centennial Church of African M. E. Zion Connection of U. S. of Amer.], 277 App Div 775; Matter of City of New York [Seventh Ave.], 196 App Div 451, 456-457), it follows that the decree appealed from and the order of the Appellate Division which the appeal brings up for review should be affirmed.