61 N.Y.2d 843 (1984)
In the Matter of the City of New York, Relative to Acquiring Title to Real Property for the Staten Island Industrial Park in the Borough of Richmond, Appellant. Jomar Real Estate Corp., Respondent.
Court of Appeals of the State of New York.
Argued January 11, 1984.
Decided February 21, 1984.
Frederick A. O. Schwarz, Jr., Corporation Counsel (Joseph A. Vogel and Leonard Olarsch of counsel), for appellant.
M. Robert Goldstein and Samuel Goldstein for respondent.
Concur: Chief Judge COOKE and Judges JONES, WACHTLER, MEYER and KAYE. Judge JASEN dissents and votes to reverse in an opinion. Taking no part: Judge SIMONS.
Order affirmed, with costs, for the reasons stated in the memorandum at the Appellate Division (94 AD2d 724), to which we add that claimant's introduction of the determination of the city planning commission with respect to another Victory Boulevard property within one-half mile of the subject parcel that "Analysis of the market area * * * indicates the ability to currently support 160,000 square feet of commercial space, comprised of convenience, service and local shopping space" also tended to establish the economic feasibility of a shopping center use.
JASEN, J. (dissenting).
I would hold that the claimant failed to establish that the highest and best use of the vacant land condemned was for a shopping center and that the weight of the credible evidence more nearly supports the use and value found by the trial court than that found by the Appellate Division. (Grant Co. v Srogi, 52 N.Y.2d 496; Mattydale Shopping Center v State of New York, 303 N.Y. 974.)
In a condemnation proceeding the condemnee has the burden of proving the highest and best use of the condemned property. (Matter of City of New York [Franklin Record Center], 59 N.Y.2d 57, 63; Heyert v Orange & Rockland Utilities, 17 N.Y.2d 352, 362.) Here, claimant has done little more than raise the hypothetical possibility of a community shopping center and the record is devoid of evidence establishing a reasonable probability that such a use could have or would have been made in the reasonably near future. (See Matter of City of New York [Broadway Cary Corp.], 34 N.Y.2d 535, 536; Matter of City of New York [Shorefront High School  Rudnick], 25 N.Y.2d 146, 149.) Claimant failed entirely to demonstrate that its purported plans were realistic. It undertook no economic feasibility study, formal or otherwise. It produced no evidence whatsoever that it explored the availability of financing, the costs of construction, the extent of tax liability, the range *846 of possible profits or any other similar criteria which would normally be expected to have been employed in actually determining the plausibility of such an anticipated use. (Matter of City of New York [Shorefront High School  Rudnick], supra.) Moreover, claimant has not identified any preliminary steps which it has actually taken toward development of the property for the specific purpose of erecting a shopping center. While it is not essential that a condemnee have an ante litem plan for highest and best use (Keator v State of New York, 23 N.Y.2d 337, 339), claimant here has attempted to bolster its claim by showing that it was implementing such a plan at the time of the condemnation. But, in fact, claimant's attempt only highlights the absence of any concrete steps having been taken. No arrangements for financing were made, no contracts for construction, or for management, or for leasing were signed, no assurances for any utility services were obtained, nor was anything else done which would clearly confirm claimant's alleged intentions. Indeed, those few actions which claimant did take, such as purchasing rights to sewer hookups, leveling the land and widening a strip of one road, do not manifest anticipation of any particular use, but, rather, are consistent with any development of the land, including the industrial park use for which it was condemned. To be sure, rather than making actual preparations, claimant has done little else but speculate about the theoretical possibility of a hypothetical shopping center.
In support of its position that a shopping center was both feasible and intended, claimant produced the following: aerial photographs which show little more than primarily vacant and undeveloped land with minimal access and a small residential development nearby, a rough approximation of the number of families and size of the population living within a one-mile radius, hastily drawn blueprints which were prepared and submitted after claimant had full knowledge of the impending condemnation proceeding and, indeed, concededly for the very purpose of the condemnation proceeding itself, rather than for actual development, and the testimony of an expert whose conclusions were predicated solely upon the afore-mentioned aerial *847 photographs and population estimation  and unsupported by any study of such customary considerations as market conditions, industry trends, local consumer preferences and buying habits, disposable per capita income or any other criteria essential to verify his appraisal. Clearly, none of what claimant produced establishes the requisite "reasonable probability", as opposed to mere possibility, that the property was conducive to development of a successful shopping center (Matter of City of New York [Broadway Cary Corp.], supra) or that claimant realistically anticipated building one. Indeed, there is nothing in the record but pure speculation to support the claim. The record fails to demonstrate that a shopping center was economically feasible, that it would have or could have been constructed and operated in the reasonably near future were it not for the condemnation, and that it was, in fact, anything other than a hastily improvised plan for the purpose of the pending condemnation proceeding.
Inasmuch as claimant has not undertaken even the slightest study to determine the economic feasibility of a community shopping center or taken any concrete steps specifically in preparation thereof, it was error for the Appellate Division to find that claimant had met its burden of proving the highest and best use for the condemned land. For these reasons, I would reverse the order of the Appellate Division and reinstate the decree and award granted at Special Term.[*]
Order affirmed, etc.
NOTES
[*] The other Victory Boulevard property referred to by the majority is very different from the one here in question and, consequently, does not serve as an accurate basis upon which to infer a similar economic feasibility. As the city planning commission stated, in the same report relied upon by the majority, the other property is situated on "one of the busiest" intersections on Staten Island, "the neighborhood closely surrounding [that] intersection" has no convenience services, and is well suited "for commercial development to serve the immediate neighborhood" largely because of its "visibility" and "accessibility". These factors clearly differentiate the two properties and render the analogy misleading.