■ In the Matter of NEW YORK CONVENTION CENTER DEVELOPMENT CORPORATION Relative to Acquiring Title to Real Property in Connection with the Convention Center Civil Project in the City of New York.—Judgment, Supreme Court, New York County (Stanley Parness, J.), entered October 11, 1989, which awarded respondent $921,000 for the appropriation of certain property, yielding a net judgment, after addition of interest, costs and disbursements and subtraction of prepayments, of $1,092,722.50, unanimously affirmed, without costs.

The subject property, an 11-story warehouse at the northeast corner of 11th Avenue and 35th Street, built upon steel columns over railroad yards, excluding land, was offered for sale in 1979 by the bankruptcy trustees of the Penn Central Railroad. Respondent's April 1979 offer of $345,000 plus brokerage fees, which ultimately amounted to $15,000, was accepted in July 1979. In August 1980, title passed to petitioner in condemnation proceedings. The court valued the property at $921,000.

Although the purchase price set in an arm's length transaction close in time to the relevant date for evaluation is evidence of the highest rank to determine the value of the property, such may be explained and other factors may be taken into account *(Plaza Hotel Assocs. v Wellington Assocs.,* 37 NY2d 273, 277). Here, we find sufficient evidence to support the trial court's conclusion that, by the date of appropriation, the value of the property was substantially in excess of the sum respondent agreed to pay one year earlier *(Matter of County of Broome [Miller Facilities Corp.],* 133 AD2d 984, 986). The fact that the purchase price was negotiated by the trustees in bankruptcy rendered the price a less reliable indicator of value, particularly since this was the last parcel in the trustees' real estate portfolio to be sold *(see, Matter of 860 Fifth Ave. Corp. v Tax Commn.,* 8 NY2d 29, 31). There was also evidence that loft/warehouse properties in New York County were, in 1978, selling for 140% of assessed valuation and in 1980 for 260% of assessed valuation, while this building sold in 1979 at almost exactly its building assessment, that the New York City commercial real estate market, particu-

larly the submarket for loft/warehouse structures, experienced a boom of perhaps unprecedented dimension commencing in late 1978 or early 1979 *(see, Columbus Holding Corp. v State of New York,* 36 AD2d 674, 675), and that prices for such properties increased 3% per month in 1979 and 10% per month in 1980. Thus, we see no basis to disturb the trial court's valuation. Concur—Murphy, P. J., Carro, Wallach, Kupferman and Asch, JJ.