OPINION OF THE COURT
Edwin Kassoff, J.
This is a condemnation proceeding involving the taking of a three-acre parcel located at 26-29 Northern Boulevard, Long Island City. The subject property consists of 130,293 square feet and has frontage of 361.93 feet on Northern Boulevard, 273.61 feet on 41st Avenue, 179.90 feet on 29th Street, and 384.11 feet on 40th Road. The property was formerly owned by defendant Peerless Weighing & Vending Machine Corporation and is an assemblage of eight individual parcels acquired by defendant between 1950 and 1967. The subject site was appropriated by the Metropolitan Transit Authority (hereinafter MTA) on January 21, 1987 for the purpose of routing a New York City subway tunnel through the parcel’s northern portion.
This is the second condemnation proceeding involving the subject property. On December 13, 1979 the MTA acquired a permanent subsurface easement and temporary easements which collectively covered the entire surface area of the lot in connection with the proposed construction of a subway tunnel. The damage map contains a provision that "[A]ny future excavation shall avoid flotation of the railroad structure and before any work of excavation, construction or alteration of any structure within or adjacent to the easement areas herein described be begun, plans showing the proposed construction shall be submitted to the New York City Transit Authority or its successors and approved by them”. The subway tunnel was not built due to a route change that required the reconfiguration of the tunnel through the northern portion of defendant’s property which area was not encompassed within the permanent subsurface easement. In order to complete its subway project, the MTA appropriated defendant’s remaining fee.
The premises has been operated as a parking lot both prior to the MTA’s acquisition of the permanent easement in 1979 and after the expiration of the temporary surface easements on December 31, 1984. It had the legal capacity to park 488 cars. The property is zoned Ml-3 which was designed for industrial and light manufacturing uses and which would *834 allow the parcel to be used as a building site for an office building having a maximum floor area ratio (hereinafter FAR) of five times the lot size, subject to compliance with off-street parking regulations.
The subject property is situated in the Long Island City section of Queens in the vicinity of Queens Plaza, a transportation hub that links midtown Manhattan and Queens. The Queensboro Bridge, leading to Second Avenue and 59th Street in Manhattan, is located approximately eight blocks west of the parcel. Subways for the IND, the IRT, and the BMT lines are within a one-block radius of the property. Bus transportation is available along Northern Boulevard, Queens Boulevard and Jackson Avenue.
In addition to Queens Plaza which is a major shopping and commercial area, the property surrounding the subject parcel is characterized by office buildings, a mix of older industrial and commercial uses, and residential uses. There are also automotive showrooms and parking lots along Northern Boulevard. Across the street from the subject property on Northern Boulevard is a five-story loft building that was converted to office space in 1987. A 10-story office building and three-story bank are south of the parcel. To the west of the parcel, opposite 29th Street, is Long Island City High School. A 12-story office building is across 41st Avenue and a residential area is north of the property. On the date of vesting, construction had commenced on the Citicorp Building, a 50-story office building located six blocks south of the subject property. In addition, the Industrial Design Center, comprised of two large manufacturing buildings that were converted into showroom and office space, is located several blocks east of the subject property. The court has made the required statutory viewing.
An owner whose property has been taken as a result of condemnation is entitled to just compensation (US Const 5th Amend; NY Const, art I, § 7 [a]), which generally is calculated by reference to the fair market value of the property at its highest and best use at the time of appropriation. (Matter of City of New York [Franklin Record Ctr.], 59 NY2d 57; Matter of Town of Islip [Mascioli], 49 NY2d 354.) That the subject property was undeveloped at the time of taking does not alter the general rule. Unimproved land must be valued in accordance with the highest and best use for which it is adaptable and available (see, Olson v United States, 292 US 246; Matter of Town of Islip [Mascioli], supra, at 360; Matter of City of New York [Shorefront High School — Rudnick], 25 NY2d 146; *835 Chase Manhattan Bank v State of New York, 103 AD2d 211), provided that the condemnee establish as a reasonable probability that such use would have been made of the property in the near future (see, Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536, affg 40 AD2d 865; Matter of City of New York [Shorefront High School — Rudnick], supra, at 149; Triple Cities Shopping Ctr. v State of New York, 26 AD2d 744, affd 22 NY2d 683) and that such use was more than a speculative or hypothetical arrangement. (See, Matter of City of New York [Shorefront High School — Rudnick], supra, at 149.)
It is the MTA’s contention that defendant is collaterally estopped from litigating the issue of highest and best use because this issue was litigated by defendant in the prior proceeding involving the MTA’s condemnation of the subsurface easement in 1979. In determining the amount of consequential damages attributable to the easement, this court found that the high cost of construction associated with building over that portion of the parcel encumbered by the easement, in relation to the market value of the property in 1979, proscribed the utilization of the remaining fee as a building site and effected a change in the highest and best use from a building site to a parking lot.
Defendant argues in opposition that the requisite identity of issue for invoking estoppel is lacking. It is defendant’s contention that the prior determination only concluded that the easement effected a change in use limited to the time of that taking. It was based upon different propositions of highest and best use and was premised upon the fact that construction costs associated with building directly over the subsurface easement prevented industrial uses for the parcel that would •have required utilization of the entire site. Even assuming estoppel was applicable, defendant argues that the rapid appreciation in real estate values and increase in the demand for office space that occurred subsequent to the easement taking created a significant change in circumstances sufficient to bar application of the doctrine.
Collateral estoppel "permits in certain situations the determination of an issue of fact or law raised in a subsequent action by reference to a previous judgment on a different cause of action in which the same issue was necessarily raised and decided”. (Gramatan Home Investors Corp. v Lopez, 46 NY2d 481, 485.) The party seeking to invoke the doctrine must prove that the issue in the prior action is "identical to *836 and therefore determinative of the issue in the current action”. (Dittmer v State of New York, 140 AD2d 663, 664; see also, Kaufman v Lilly & Co., 65 NY2d 449; Hylan Flying Serv. v State of New York, 54 AD2d 278, 281, affd 49 NY2d 840.) The issue in the prior adjudication must be the point actually to be determined in the second proceeding such that " 'a different judgment in the second would destroy or impair rights or interests established by the first’ ”. (Ryan v New York Tel. Co., 62 NY2d 494, 501, citing Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304, 307 [Cardozo, Ch. J.].) A significant change in factual circumstances may render the application of collateral estoppel inappropriate. (Manitou Sand & Gravel Co. v Town of Ogden, 55 NY2d 790; Matter of Morehouse v Town of Horicon Planning Bd., 85 AD2d 769; Barry Corp. v Mushroom Makers, 85 AD2d 544; Vincent v Thompson, 50 AD2d 211.) Thus, in Commissioner of Community Dev. of City of Rochester v Apton (115 AD2d 271), prior judgments were held not to collaterally estop a municipality from arguing the constitutionality of its new zoning regulations where the condition of the subject property and surrounding neighborhood had changed due to the substantial lapse of time.
Evidence of the valuation of a parcel prior to the date of appropriation is not dispositive where intervening factors are shown to have substantially effected its value. (See, Matter of New York Convention Ctr. Dev. Corp., 169 AD2d 543; Matter of Town of Esopus [Gordon], 162 AD2d 829.) Similarly, highest and best use is not a static concept, but one that fluctuates pursuant to changes in market value, demand, land use regulations, and available engineering techniques. The MTA, as the party seeking to invoke the doctrine of collateral estoppel, has the burden of showing that claimant is precluded from arguing that it is entitled to the fair market value of its property in 1987 pursuant to "its highest and best use on the date of taking”. (Matter of City of New York [Franklin Record Ctr.] supra, at 61; see also, Matter of Town of Islip [Mascioli] supra, at 360; Keator v State of New York, 23 NY2d 337, 339.)
This court holds that the prior determination of damages attributable to the taking of the subsurface easement in 1979 does not collaterally estop defendant from litigating the issue of highest and best use for its property in the appropriation of defendant’s remaining fee interest in 1987. The MTA has failed to establish the requisite identity of issue. (See, Kaufman v Lilly & Co., supra.) In determining the value of the *837 remaining fee for purposes of ascertaining consequential damages, the prior decision stated that the highest and best use of the parcel in 1979 was as a site for an industrial or commercial building with sales offices at ground level. Despite some conceded errors by both sides in the application of zoning regulations, it was envisioned that the building would encompass the entire parcel. It is thus evident that consequential damages were awarded on the basis that the easement taking deprived defendant of the utilization of its entire fee with respect to building uses that contemplated construction upon the full site or over the easement area. The former decision makes clear that the finding of use was based solely upon the fact that the costs associated with building over the approximately 20% of the parcel encumbered by the easement were prohibitive when considered in relation to the low market value of the site for industrial uses in 1979. We noted therein that "literally hundreds of pages of testimony were taken up by detailed engineering testimony” regarding the problem of building oyer the easement and that the use of this property, uniquely burdened by such costs, was not considered economically feasible as a building site for the only use contemplated for this property in 1979.
It is beyond cavil that if damages had been awarded for the full taking of all building uses, the award for loss in property value would not have been a mere 7.2% of value. Moreover, the easement created no legal prohibition to prevent defendant from selling the parcel for use as a building site or from constructing its own building on the property. Nor was there any physical impediment to preclude such use, provided the building was constructed in accordance with the easement restrictions or away from the easement area. The parties never argued that construction over the subway easement was impossible, but that it simply was not economically feasible for this property at the time of the taking. Contrary to the MTA’s contentions, the prior adjudication did not determine that the remaining fee was not buildable as to collaterally estop defendant from valuing the premises on any different basis in the instant case. (Cf., Banks v State of New York, 56 AD2d 972.)
Even assuming estoppel was applicable, defendant has demonstrated that a significant change in factual circumstances occurred between the 1979 easement taking and the instant fee appropriation in 1987 sufficient to render the application of collateral estoppel inappropriate and to establish that the *838 highest and best use of the subject property on the date of the instant appropriation was an office building site.
While office use was not contemplated as a feasible use at the time of the easement appropriation, the credible evidence in this proceeding established that there was a rapid increase in the demand for office space and property values as well as an over-all change in the character of the surrounding area from industrial to office use that occurred subsequent to the easement taking. In contrast to the weak market for office space in 1979, the surge in demand for such use in 1987 was evidenced by the development or conversion of numerous sites in the surrounding area to office uses. Defendant’s real estate appraiser, Robert Von Ancken, testified that at the time of the instant appropriation, Long Island City including the area around Queens Plaza became marketable as a secondary or back office location for companies doing business in Manhattan. He maintains that this conversion to office uses was evidenced by the construction of the approximately 1,000,000 square foot Citicorp building, the development of the International Design Center, the newly constructed 10-story Hunters Point Plaza, and the conversion of the Executone Building to office use. Several buildings immediately surrounding the subject parcel had also been developed or renovated for office uses. On the date of appropriation the building opposite the subject property on Northern Boulevard was being converted from manufacturing to office use. A 12-story multitenant office building, which included the Social Security Administration as one of its office tenants and which building had as its tenant a restaurant on the ground floor, was developed on 41st Avenue. Adjoining the subject site to the south was a three-story bank building and a 10-story office building.
Robert Reach, defendant’s consulting architect, testified that at the time of appropriation the Department of City Planning was evaluating proposals to make the area running along Jackson Avenue a central business district. Penny Lee, a city planner for Community Board 2 testified for the MTA that the northerly border of the proposed Jackson Avenue Corridor runs to the subject property at 41st Avenue. While the study was incomplete at the time of appropriation, the fact that the creation of a special business district in the vicinity of the subject was being evaluated by the Department of City Planning is a factor that would be considered by a prospective purchaser of office space. In addition, defendant submitted evidence as to incentive programs offered by the City of New *839 York to lure users of back office space to the outer boroughs, which incentives included reductions in corporate taxes, the recision of commercial occupancy taxes, abatements in real estate taxes, and reductions in utility charges.
In addition to demonstrating that there was a demand for office use, defendant has also shown that the subject property was suited for the construction of an office building. Shael Shapiro testified for the defendant that the existence of the easement would not prevent the development of an office building on the site. He further stated that it was not unusual to construct an office building on property encumbered by a subsurface easement and that the area affected by the easement in this case could continue to be utilized for parking. Moreover, he testified that the unusually large size of the subject property, as well as its location, made it uniquely suitable for the development of an office building notwithstanding the loss of some buildable area due to the easement. It was undisputed that there was a scarcity of large parcels available for the development of an office building. Robert Silman, a licensed professional engineer, acknowledged as one of the best engineers to do a structural analysis in the City of New York by the MTA’s architect, also testified for the defendant. Mr. Silman testified that an office building with two stories below ground located 75 feet from the easement could be built with no material effect on the adjacent subway tunnel. In the expert’s opinion, the building could be constructed on end bearing piles without incurring any extraordinary costs.
In contrast to the defendant’s proof, the evidence as to highest and best use preferred by the MTA’s appraiser lacks any independent analysis of the factual circumstances as they existed on the date of the taking. The appraisal report of the MTA’s expert, Robert W. Jones, is fatally flawed by the erroneous assumption that "notwithstanding other possible and permissible uses for the subject property” the prior decision of this court regarding the 1979 easement taking "rendered uses other than as a parking lot to be not feasible”. He testified that prior to his discussions with counsel for the MTA regarding the 1979 easement trial, he had determined that the highest and best use of the property was for industrial type development. In his appraisal report Mr. Jones states that "[a]nalysis of the sales of properties in the area did not find any that sold for use as a parking lot”. Rather, he found that "[t]hese sales sold to be developed for industrial and *840 commercial uses”. Despite his own findings as to land use, Mr. Jones concluded that the highest and best use of claimant’s three-acre site was as a parking lot.
Further, Mr. Jones’ testimony as to a lack of demand for office space was not credible. While he testified that an individual from the office of real estate developer Richard Zirinsky Associates, whose name he could not recall, told him there was no demand for office space, Mr. Jones was unaware the Zirinsky firm had purchased properties in Long Island City between 1984 and 1988 for conversion to office space. Similarly, his testimony as to a lack of increase in property values between 1979 and 1987 lacked credibility and was contradicted by a simple analysis of the vacant land sale comparables used in his own appraisal report. Mr. Jones conceded that the property used as his vacant land sale 1 sold in 1979 for $700,000, was resold in 1982 for $1,250,000, and was sold for the development of the Citicorp Building in 1985 for $2,350,000. Vacant land sale 2 was purchased in 1979 for approximately $340,000 and was sold to General Motors Corporation for the development of dealership sales offices in 1984 for $7,250,000. It is clear that Mr. Jones made no independent analysis of the highest and best use of the subject property. Rather, his conclusion as to use was based upon the MTA’s erroneous interpretation of the court’s prior decision and, thus, lacks probative value.
Based on the credible evidence presented, the court finds that defendant has established that a significant change in factual circumstances occurred subsequent to the 1979 easement taking characterized by a demand for back office space in the vicinity of the subject property and a dramatic increase in property values sufficient to change the highest and best use of the subject site. In addition to the material change in circumstances, the requisite identity of issue is wholly lacking in this case and precludes the defense of collateral estoppel.