SAMFRED BELT LINE CORP., Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 51555.)

Third Department, November 29, 1973.

*Louis J. Lefkowitz, Attorney-General* (*Henderson G. Riggs* and *Ruth Kessler Toch* of counsel), for appellant.

*Casey, Yanas & Mitchell* and *Hancock, Estabrook, Ryan, Shove & Hust* (*William L. Allen, Jr.,* of counsel), for respondent.

KANE, J. This is an appeal from a judgment in favor of claimant, entered October 10, 1972, upon a decision of the Court of Claims.

On July 14, 1953 claimant purchased approximately 68 acres of land located in the City of Albany with about 1,000 feet fronting on Central Avenue, and 1,200 feet on Russell Road running perpendicular thereto. Between July, 1953 and February, 1957 various portions were conveyed from the original tract for commercial use, including about 14 acres at the corner of Central Avenue and Russell Road, now known as the Westgate Shopping Center, leaving an irregularly shaped parcel of land with about 300 feet of frontage on Central Avenue, 100 feet of frontage on Russell Road, and 220 feet of frontage on a dead end access road to said premises known as Third Street. Other portions became subject to certain leases, leaving approximately 36.22 acres as the subject matter of this litigation. In November, 1956 claimant executed a lease with First National Stores, Inc., for space in a building to be constructed by claimant pursuant to an over-all plot plan for a shopping center on the premises. Efforts to obtain binding commitments of other tenants proved unsuccessful and in 1958 the lease with First National Stores was canceled. In 1961 and again in 1962 claimant became aware of plans for the appropriation of certain portions of its lands for a northside arterial highway. Thereafter, plans for a shopping center were abandoned in favor of the regular commercial development that thereafter ensued. It has been stipulated that as of June 16, 1964, the State appropriated 10.308 acres in five separate parcels leaving the remaining land divided into three parcels, the largest remaining parcel of vacant land consisting of 13.568 acres with 300 feet frontage on Central Avenue alone, and smaller parcels with frontage on Watervliet Avenue and Third Street Extension, but with limited useful access.

It is claimant's contention that, although the actual taking did not occur until June 16, 1964, the fact that such taking was

contemplated in 1961 and that this fact was of general public knowledge, it was forced to substantially change its plans from development of the premises as a " regional shopping center " to " limited commercial uses on the portion of the property not to be taken ". It reasons, therefore, that the measure of damages would not be the diminished value of the property caused by the State's action, " but on its value for use as a regional shopping center *as of the date of the appropriation, that is as if it had not been subjected to the debilitating effect of the threat of condemnation.*" As authority for its position, claimant relied upon *City of Buffalo* v. *Clement Co.* (28 N Y 2d 241), and offered expert proof of a before value of $6,311,400 and an after value of $2,697,700 dividing the total damages of $3,611,700 into $1,796,700 as direct damages for the 10.308 acres appropriated and $1,815,000 consequential damages to the remaining parcels.

The State, on the other hand, rejected the " regional shopping center " concept of highest and best use and contends its highest and best use is that for which it has been used by claimants, that is for office and commercial use. Its expert found a before value of the land at $993,424 and an after value, excluding benefits, of $757,022 and estimated damages to be $236,402, all of which were direct damages. The court adopted claimant's position and found a before value of $3,944,250 at a value of $108,900 per acre with an after value of $1,827,647. It found direct damages for the 10.308 acres at $1,122,541 and $994,062 consequential damages to the remaining parcels. The court also concluded that the property could have been used as a regional shopping center except for the announced project takings and applied the rule of damages for the debilitating effects of the threat of condemnation (*City of Buffalo* v. *Clement Co., supra*; *Niagara Frontier Bldg. Corp.* v. *State of New York*, 33 A D 2d 130, affd. 28 N Y 2d 755; *Westvale Acres* v. *State of New York*, 38 A D 2d 881). In making this determination, the court found that although claimant changed its plans in 1962 for projected development of the site as a shopping center to a commercial development, its valuation date would be the date of taking, June 16, 1964, and, accordingly, disregarded the construction of an office building and a furniture store on the premises prior to the taking date.

It is a matter of basic concern whether the change in position of the claimant was the result of its inability to assemble the necessary elements for a shopping center *prior* to 1961, or whether the knowledge of the projected taking *subsequent* to that date caused the change, or a combination of both. Under

the circumstances of this case, the factual pattern disclosed may prove that claimant's reliance on the *Clement* decision is misplaced because that decision and similar cases refer to '' affirmative value-depressing acts '' that bring about the '' debilitating effect '' upon property in a particular area (*Niagara Frontier Bldg. Corp.* v. *State of New York, supra*; *City of Buffalo* v. *Irish Paper Co.*, 31 A D 2d 470, affd. 26 N Y 2d 869). Here we find no evidence of any affirmative interference on the part of the State that can be construed as unreasonable conduct sufficient to apply the '' condemnation blight '' theory in this case. Under all the circumstances responsibility for claimant's change of position cannot be assigned to the State.

We are also unable to find sufficient evidence to support claimant's contention that damages should be founded upon the property's highest and best use as a regional shopping center. The evidence does not support such a determination.

It is clear from this record that the highest and best use is as urged by the State, namely for ordinary commercial development as it has heretofore been used. However, we must reject the State's evidence as to value because of certain restrictions placed upon the testimony of their appraiser. Additionally, we find that the adjustments to comparable sales made by the State's appraiser are not sufficiently understandable to support an award or to permit intelligent review.

The result is that no range of testimony is presented upon which an award can be made, and the judgment must be reversed and a new trial granted.

The judgment should be reversed, on the law and the facts, and a new trial granted, without costs.

HERLIHY, P. J., STALEY, JR., COOKE and MAIN, JJ., concur.

Judgment reversed, on the law and the facts, and a new trial granted, without costs.