■ IRV-CEIL REALTY CORP., Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 49205.) — Appeal from a judgment, entered June 28, 1972, upon a decision of the Court of Claims which awarded claimant $231,022, plus interest, for the appropriation of its land for highway purposes. Claimant owned a 1.626-acre parcel of land situated on the northerly side of the Jericho Turnpike in the Town of Huntington, Suffolk County. The property was developed in three sections: a restaurant and parking lot; a children's amusement park; and a miniature golf course. It was located in a general business zone and its highest and best use before the appropriation was for highway commercial use consonant with the existing zoning. The court found that only the restaurant area was within the highest and best use. At trial, the parties stipulated to a value of $58,400 for the restaurant and that portion of the award is not before us; nor is the restaurant fixture value of $12,872. What is involved is the court's method of evaluation of the amusement park area, and the adequacy of its award for the golf course area due to its failure to make any award for the fixtures on the miniature golf course. The amusement park area, consisting of 23,653 square feet, was leased to Playland at Huntington, Inc. for a 25-year term which had over 19 years left to run at the time of appropriation. Pursuant to the lease, which restricted the use of the premises "as a place of amusement", the tenant was obligated to pay a rental of 10% of its annual gross income up to $50,000 and 15% of such income in excess thereof, with a minimum annual rental of $2,000. The rental payments actually made by the tenant in the four years immediately preceding the appropriation were at or near the minimum rental. Apparently, business was adversely affected by a ferris wheel accident which resulted in the death of a child in 1963. Based upon the market data method of valuation, the court arrived at a $2.50 per square foot value for the unencumbered fee, for a total land value of $177,000 which is not challenged. However, the court carved out of this value $17,250 representing the value of the lease. Because of the amusement park restriction in the lease which impaired its economic advantage to the tenant, as reflected by the past performance of the operation, the court found no competent support, under the contract rent-economic rent advantage appraisal procedure, for the $33,000 leasehold valuation proposed by Playland. At the same time, the court noted that the existence of a long term, low-yield lease was an encumbrance on the fee, which would have to be removed in order to develop the property for its highest and best use. Using what it denominated as the "legal holdup" theory of valuation, the court attempted to determine the value of the leasehold as the amount which lessor would be willing to pay and which lessee would be willing to accept to cancel the lease. The court thus arrived at a $1.75 per square foot for the property encumbered by the lease or a $17,250 value for the lease. The rule for evaluation of leasehold interests was stated by the Court of Appeals as follows: " Generally speaking, where there are two or more interests or estates in a condemned parcel, the proper mode of assessing damages is to ascertain first the damage to the fee as if it were unencumbered, and then to apportion that amount among all of the estates and interest which are held in the property * * * The damages to which a lessee is entitled are generally the value of the leasehold (*Matter of City of New York* [*Delancey St.*], 120 App. Div. 700, 708). In computing the value of the leasehold, the court must first ascertain the fair rental value of the premises and then deduct therefrom the actual rent reserved for the remaining period or term of the lease." (*Great Atlantic & Pacific Tea Co.* v. *State of New York*, 22 N Y 2d 75, 84.) Here, the court did not specifically articulate its finding as to the fair rental value of the premises. The State's appraiser found no basis for an

economic advantage and claimant's appraiser offered no proof- on this issue. Playland's appraiser found a value of $33,000 which, as indicated earlier, the court rejected *in toto*. However, in concluding that the tenant enjoyed no economic advantage under the lease the court must have found that the fair rental value of the premises was at or below the rent reserved in the lease. Normally, such a lease would be deemed worthless (see, e.g., *Arlen of Nanuet* v. *State of New York*, 26 N Y 2d 346, 356–357; *Matter of City of New York* [*Delancey St.*], 120 App. Div. 700, 706, 707). However, the value of a lease, even though nominal, may be determined not only by the economic rent advantage but also by factors such as the length of the term and the conditions of the lease, by economic conditions and by other material considerations which would enter the mind of a prospective purchaser of the term (*Matter of City of New York* [*Delancey St.*], *supra*, pp. 706–707; see, also, 4 Nichols, Eminent Domain [rev. 3d ed.], § 12–42, subd. [3], pp. 12–516 to 12–517). Thus, it was not improper for the court below to consider the market realities of the situation in which the parties found themselves and to conclude that despite the lack of any present economic advantage to the tenant under the lease, nevertheless by virtue of its long term and restrictive conditions it had some value for which the tenant should be compensated. However, permitting an award of damages on such a theory is not an invitation to the parties to engage in rank speculation as to the value of the leasehold. Rather, what is called for is proof based, where possible, on objective facts, that as of the date of the appropriation, there was a reasonable probability that the lessee could have realized some return on his interest in the condemned property. There is no such proof in the record before us and, absent an articulation by the court of the basis of its valuation of the leasehold interest, intelligent judicial review is not possible. A new trial must therefore be had on this issue (*Getty Oil Co.* v. *State of New York*, 33 A D 2d 705, 706–707). The miniature golf course had been operated by a tenant under a lease which was to expire June 13, 1969.* Two months prior to the appropriation, in September, 1967, the tenant terminated the lease and transferred the golf fixtures to claimant pursuant to an agreement, the terms of which were never disclosed. The court noted that these fixtures at the time of the appropriation were fee owner underimprovements and did not enhance the value of the property for its highest and best use. It therefore denied any compensation for these fixtures. When property is valued on a commercial basis, no value should be assigned to improvements which are inconsistent with that use (*Van Kleeck* v. *State of New York*, 18 N Y 2d 897). The improvements on the miniature golf course were unquestionably inconsistent with the court-determined highest and best use (pursuant to which claimant was compensated for the land) and the court properly refused to award compensation for the fixtures. Judgment reversed, on the law and the facts, without costs, and a new trial ordered limited solely to the value of the leasehold; and matter remitted to the Court of Claims for further proceedings consistent herewith and also consistent with prior findings except those concerning the value of the leasehold. Herlihy, P. J., Cooke, Sweeney, Kane and Main, JJ., concur.

___

* The court erroneously concluded that the lease expired prior to September, 1967.