■ CHEMICAL CORP., LTD., Appellant, v TOWN OF EAST HAMPTON, Respondent. [748 NYS2d 606] —In an action, inter alia, to recover damages for the partial taking of real property, the plaintiff appeals, on the ground of inadequacy, from a judgment of the Supreme Court, Suffolk County (Gowan, J.), entered January 19, 2001, which, after a nonjury trial, is in its favor and against the defendant in the principal sum of only $32,000 for a partial taking of its property in connection with a highway improvement project.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

The subject property consists of approximately 65,000 square feet of undeveloped land on Fort Pond Bay in the Town of East Hampton (hereinafter the Town). The property is zoned "A" residential, which allows construction of single-family residences on a minimum of 40,000 square feet. The north side of the property runs 500 feet along the bay, and the south side runs 502 feet along Navy Road. Although the evidence was conflicting as to the depth of the property, we adopt the more conservative figures of 110 feet on the west side and 112 feet on the east side, prior to the taking. The property was formerly owned by East End Gravel Corp. (hereinafter East End), and the concrete foundation of a sand and gravel hopper remain on the site. In 1988 East End sold the property for $375,000 to the plaintiff.

In 1992, the Town condemned an irregular strip of land along the south side of the property to enlarge Navy Road. The strip was about 500 feet long and about 19 feet wide on the east side of the property. The strip narrowed toward the west so that the width of the property on the west side remained the same. The total area condemned was 8,531 square feet. At the time of the condemnation, the property was used for recreational fishing and swimming. The plaintiff filed a claim against the Town for direct and consequential damages of $100,000 in May 1995 by its president, Perry B. Duryea, Jr., who was, at one time, the president of East End. In October 1996 the plaintiff sold the property for $100,000 to Vera Engstrom, a Montauk resident. The plaintiff's office address listed on the deed was a post office box in Montauk.

A nonjury trial was held in March 2000, at which an appraiser for the Town and an appraiser for the plaintiff testified. The appraisers' conclusions as to the direct damages for the loss of the 8,531 square feet were not far apart, based on a value of about $4 per square foot at the time of the taking. The direct damages calculated by the appraisers for the Town and the plaintiff were $32,000 and $34,000, respectively. The Supreme Court determined that the plaintiff was entitled to receive only direct damages of $32,000 for the condemnation.

The primary issue on appeal concerns whether the plaintiff is entitled to recover consequential or severance damages based on the alleged loss in value of the remaining 56,500 square feet. The Town's appraiser concluded that there were no consequential damages, while the plaintiff's appraiser concluded that the remainder of the property was worth only $85,000 after the taking, a loss in value of about $141,000.

It is well settled that the measure of damages for a partial taking of real property is the difference between the value of the whole property before the taking and the value of the remainder after the taking (see *Diocese of Buffalo v State of New York,* 24 NY2d 320, 323; *Matter of County of Nassau v 408 Realty Corp.,* 283 AD2d 644; *Matter of Nassau County,* 278 AD2d 236). Consequential damages are measured by the difference between the before and after values, less the value of the land and improvements appropriated (see *Matter of Estate of Haynes v County of Monroe,* 278 AD2d 823, 825; *Mil-Pine Plaza v State of New York,* 72 AD2d 460, 462). The measure of damages must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time (see *Matter of City of New York,* 59 NY2d 57, 61; *627 Smith St.*

*Corp. v Bureau of Waste Disposal of Dept. of Sanitation of City of N.Y.,* 289 AD2d 472, 473).

Both appraisers concluded that the highest and best use of the property in 1992 was for the construction of a single-family residence. The plaintiff's appraiser concluded that the before-taking value of the lot was $260,000, based on six comparables. These comparables were properties located seven miles from the subject property on a similar bay, which were sold between 1984 and 1993 at prices ranging from about $3.50 per square foot to about $7 per square foot. The plaintiff's appraiser concluded that the value of the subject property was about $4 per square foot, primarily because its depth was significantly less than that of the comparables. The appraiser's report also included reference to a subdivision of single-family homes, proposed in the early 1990's, on a four-acre parcel on Fort Pond Bay, which was never realized, and in which the estimated retail value of each 60,000 square-foot lot was $260,000, or about $4 per square foot.

The Town's appraiser concluded that the before-taking value was about $225,000, based on four comparable sales of vacant waterfront properties between 1990 and 1994. Three of the properties were in Montauk and one was in Amagansett. In arriving at a value of $225,000, or $3.80 a square foot, the appraiser made adjustments based on differences in water frontage and view. He also took into account the negative impact of the shallow depth of the subject property and the need for special permits or variances in order to develop the property.

In determining the after-taking value, the plaintiff's appraiser abandoned the $4 per square foot value for the remainder of the property. He concluded that the loss of depth on the east side of the property would seriously inhibit development of the property due to an inability to meet setback requirements. In addition, any improvement to the property would require a natural resources special permit under the Town Code. He concluded that the remainder of the subject property might not be buildable, and, if it was buildable, the area available for a structure was constricted and close to tidal water. He compared the remainder of the subject property to an adjacent parcel on Fort Pond Bay, which was unbuildable, and concluded that the value of the remainder of the subject property was $1.50 per square foot, thus resulting in consequential or severance damages of $141,000.

In contrast, the Town's appraiser concluded that the condemnation did not affect the value of the remainder of the property. After the condemnation, the size of the subject prop-

erty still exceeded the minimum square-foot requirement for single-family residential zoning, and the condemnation did not make it more difficult to obtain the required variances. Therefore, in considering the after-taking value, the appraiser relied on the same comparables he used in computing the before-taking value. He concluded that the only damages were due to the taking of the land itself, which, at $3.80 a square foot, amounted to $32,000.

"It is widely accepted that a partial taking does not itself cause a consequential loss * * * Damages for such a loss must be based upon either the opinion of an experienced, knowledgable expert * * * or on actual market data showing a reduction in the value of the remainder *as a result of the appropriation*" (*Zappavigna v State of New York,* 186 AD2d 557, 560 [emphasis added]; *see also Matter of Town of Oyster Bay,* 174 AD2d 676). Contrary to the opinion of the plaintiff's appraiser, there was evidence that, even with the loss of the strip along Navy Road, there remained sufficient footage to allow for the construction of a house with the appropriate setbacks. The remaining problems related to development of the property, such as its low elevation and need for special permits, existed before the taking, and the plaintiff failed to establish that these difficulties were made worse by the condemnation. Furthermore, the plaintiff's appraiser relied on an adjacent property on Fort Pond Road, which was unbuildable, as an after-taking comparable. That property was burdened with easements in favor of residents across the street, and, in lieu of condemnation, the owner deeded the property to the Town for about $90,000, or 75 cents per square foot.

The plaintiff's appraiser also relied on the $100,000 sale price of the subject property in 1996. However, while an arm's-length transaction is usually the best indicator of market value (*see Matter of Allied Corp. v Town of Camillus,* 80 NY2d 351), the circumstances surrounding this sale were never explained by the plaintiff. More importantly, even if this was an arm's-length transaction, the Supreme Court could reasonably reject the claim that the low price paid in 1996 was attributable to the loss of the strip of property along Navy Road, rather than due to the other characteristics of the property which existed prior to the taking and made building more difficult.

Whether the taking resulted in a change of value of the remainder of the property presented a credibility issue for the Supreme Court (*see Matter of County of Warren,* 244 AD2d 615). The evidence presented by the Town's appraiser, if credited, established that the taking did not result in conse-

quential damages (*see Matter of County of Warren, supra; Klein v State of New York,* 187 AD2d 706). The Supreme Court could reasonably reject the opinion of the plaintiff's appraiser that a 56,500 square-foot buildable residential lot in East Hampton with 500 feet of beachfront would drop in value from $260,000 to $85,000 in 1992 merely because a strip of property was condemned in order to widen the road. The Supreme Court's determination was supported by the expert testimony and adequately explained. Accordingly, we affirm the judgment insofar as appealed from (*see Matter of City of New York,* 55 NY2d 885; *Matter of County of Dutchess v Dutchess County Indus. Dev. Agency,* 213 AD2d 635). Feuerstein, J.P., O'Brien, Adams and Cozier, JJ., concur.