■ CHESTER INDUSTRIAL PARK ASSOCIATES, LLP, Respondent, v STATE OF NEW YORK, Appellant. [884 NYS2d 243]—

In an eminent domain proceeding, the defendant State of New York appeals, as limited by its brief, from so much of a judgment of the Court of Claims (Mignano, J.), dated December 18, 2007, as, after a nonjury trial and upon a decision of the same court dated September 7, 2007, awarded the claimant, Chester Industrial Park Associates, LLP, damages allegedly incurred with respect to its property denominated as subparcel

A1 of section 117, block 1, lot 1.1, resulting from appropriation of its property and for the appropriation of a monument sign.

Ordered that the judgment is modified, on the law, by deleting the provision thereof awarding damages with respect to subparcel A1 of section 117, block 1, lot 1.1; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Court of Claims for a new trial with respect to the portion of the claim that sought damages with respect to subparcel A1 of section 117, block 1, lot 1.1, and for the entry of an amended judgment thereafter.

In this eminent domain proceeding, the claimant, Chester Industrial Park Associates, LLP, seeks direct and consequential damages allegedly resulting from the appropriation of portions of its real property by the State of New York for the purpose of re-routing New York State Route 94. After trial, the Court of Claims awarded the claimant the sum of $1,087,020, of which the sum of $517,994 consisted of direct and consequential damages resulting from the appropriation of a 12.6 acre portion of the claimant's property designated as section 117, block 1, lot 1.1. In the judgment appealed from, the Court of Claims, inter alia, awarded the claimant the sum of $13,630 for the appropriation of a monument sign. The State appeals from those portions of the judgment.

The actual appropriation of lot 1.1, as to which the claimant seeks direct damages, was limited to a diagonal strip designated by the claimant's appraiser as subparcel A3. The remainder of lot 1.1, as to which the claimant seeks consequential damages, consists of 41,589 square feet in two small subparcels located roughly to the northwest and northeast, respectively, of subparcel A3, which are known as subparcels A2 and A4, and a 331,562 square foot subparcel, designated as subparcel A1, which is located south of subparcel A3. As the State recognizes in its brief, there is no dispute as to the value of subparcels A2, A3, and A4.

"It is well settled that the measure of damages for a partial taking of real property is the difference between the value of the whole property before the taking and the value of the remainder after the taking . . . Consequential damages are measured by the difference between the before and after values, less the value of the land and improvements appropriated. The measure of damages must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time" (*Chemical Corp. v Town of E. Hampton*, 298 AD2d

419, 420 [2002] [citations omitted]). "In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony, or be supported by other evidence and adequately explained by the court" (*Matter of City of New York [Reiss]*, 55 NY2d 885, 886 [1982]; *see Estate of Dresner v State of New York*, 262 AD2d 274, 275 [1999]).

Here, the parties presented conflicting expert testimony regarding the highest and best use of subparcel A1 both prior to and after the appropriation. The Court of Claims correctly rejected the conclusion reached by the claimant's appraiser because he was mistaken as to the applicable zoning and the record failed to support his finding that the wetlands on the parcel would have no impact on its potential development. The Court of Claims also correctly rejected the conclusion reached by the State's appraiser, who found that the highest and best use of subparcel A1 would be achieved by combining it with adjoining parcels to increase their development potential, which would not, in his view, impair the value of subparcel A1. The Court of Claims correctly found this approach to be speculative (*see Matter of City of New York [Rudnick]*, 25 NY2d 146, 149 [1969]; *Matter of HBP Assoc. v County of Orange*, 277 AD2d 237 [2000]).

Having rejected the approaches taken by the parties' appraisers, the Court of Claims reached its determination as to the value of subparcel A1 by finding that the highest and best use of subparcel A1 prior to the appropriation was as a "minimal-impact warehouse or storage facility" and that after the appropriation subparcel A1 was inaccessible, leaving it with only a nominal value, postappropriation, of $.30 per square foot. There was nothing in the record, however, to support this finding as to the highest and best use of the property. Since the record is insufficient to render a determination as to the value of subparcel A1, a new trial is required with respect to that issue (*see Matter of County of Suffolk v Kalimnios*, 275 AD2d 455, 456-457 [2000]; *Yaphank Dev. Co. v County of Suffolk*, 203 AD2d 280, 282 [1994]). Because the suitability of access is "directly related to the highest and best use of the property" (*Priestly v State of New York*, 23 NY2d 152, 156 [1968]), that issue must be addressed at the new trial as well.

The State's contention that the Court of Claims erroneously awarded compensation for the appropriation of the monument sign is without merit (*see Cooney Bros. v State of New York*, 24 NY2d 387, 392-393 [1969]; *McDonald v State of New York*, 52 AD2d 721, 722 [1976], *affd* 42 NY2d 900 [1977]). Rivera, J.P., Spolzino, Angiolillo and Balkin, JJ., concur.