■ In the Matter of 730 EQUITY CORP., Respondent-Appellant, v NEW YORK STATE URBAN DEVELOPMENT CORPORATION, Doing Business as EMPIRE STATE DEVELOPMENT CORPORATION, Appellant-Respondent. [37 NYS3d 599]—

In a claim, in effect, pursuant to EDPL article 5 for compensation arising from the condemnation of real property, the condemnor, New York State Urban Development Corporation, doing business as Empire State Development Corporation, appeals, as limited by its brief, on the ground of excessiveness, from so much of a judgment of the Supreme Court, Kings County (Saitta, J.), entered June 26, 2014, as, upon a decision of the same court dated May 7, 2014, made after a nonjury trial, awarded the claimant the principal sum of $6,906,000 as just compensation for the taking of the claimant's real property, and the claimant cross-appeals, as limited by its brief, on the ground of inadequacy, from so much of the same judgment as awarded it the principal sum of only $6,906,000 as just compensation for the taking of its property.

Ordered that the judgment is affirmed, without costs or disbursements.

The claimant owned a 20,738 square foot, irregularly shaped, vacant parcel of real property at 730-740 Atlantic Avenue in Brooklyn, located at block 1120, lot 35, between Carlton Avenue and 6th Avenue. The property has 275 feet of frontage on Atlantic Avenue to the north and curves to a point at Carlton Avenue. To its south is a Long Island Rail Road (hereinafter LIRR) rail yard, which is below grade and separated from the property by a retaining wall. The property was located in an M1-1 manufacturing district, and had previously been improved with a gas station. The property was subject to a long-term lease with Amoco, which had intended to construct a gas station on the property. In December 2009, New York State Urban Development Corporation, doing business as Empire State Development Corporation (hereinafter ESDC), commenced an eminent domain proceeding to take numerous properties,

including the subject parcel, as part of the Atlantic Yards project. By order dated March 1, 2010, the Supreme Court granted condemnation. The claimant then commenced this claim for compensation.

At the nonjury trial on the issue of compensation, the claimant proffered experts who opined that, in the absence of the project, there was a reasonable probability that the property would have been rezoned to C6-2A, which permits commercial uses up to a floor area ratio (hereinafter FAR) of six, along with residential and community facility uses, and that the highest and best use of the property was as a 12-story budget hotel, for a valuation of $20,650,000 as of the vesting date. ESDC proffered an expert opinion that such a rezoning was unlikely and the highest and best use of the property was an auto-related use under the M1-1 zoning, for a valuation of $2,075,000 as of the vesting date. After trial, the Supreme Court determined that the claimant had established a reasonable probability of rezoning and its proffered highest and best use. The court made certain adjustments to the claimant's appraisal, including the deduction of $2,792,576 in extraordinary costs related to a need to excavate and replace unsuitable soils and the costs of LIRR approvals and monitoring, on which ESDC had provided expert evidence. The Supreme Court determined that just compensation for the taking of the property was $9,186,000. Judgment was entered in favor of the claimant and against ESDC in the principal sum of $6,906,000, representing the valuation of the property less an advance payment of $2,280,000. ESDC appeals, and the claimant cross-appeals.

The measure of damages in a condemnation case " 'must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time' " (*Chester Indus. Park Assoc., LLP v State of New York*, 65 AD3d 513, 514 [2009], quoting *Chemical Corp. v Town of E. Hampton*, 298 AD2d 419, 420 [2002]). The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future (*see Matter of City of New York [Broadway Cary Corp.]*, 34 NY2d 535, 536 [1974]; *Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.]*, 139 AD3d 863 [2016]; *Yaphank Dev. Co. v County of Suffolk*, 203 AD2d 280, 281 [1994]; *Matter of Consolidated Edison Co. of N.Y. v Neptune Assoc.*, 190 AD2d 669 [1993]). "The potential uses the court may consider in determining value are ordinarily limited to those uses permitted by the zoning regulations at

the time of taking" (*Matter of Town of Islip [Mascioli]*, 49 NY2d 354, 360 [1980]). However, when there is a reasonable probability of rezoning, some adjustment must be made to the value of the property to reflect that fact (*see id.* at 360-361; *Matter of Town of Oyster Bay [BPJ Mar. Corp.]*, 139 AD3d 741 [2016]).

"In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony or be supported by other evidence and adequately explained by the court" (*Matter of City of New York [Reiss]*, 55 NY2d 885, 886 [1982]; *see Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.]*, 102 AD3d 787, 790 [2013]; *Matter of Town of E. Hampton [Windmill II Affordable Hous. Project (9 Parcels)]*, 44 AD3d 963, 964 [2007]). Where the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question "with such adjustments as the evidence will support" (*Crosby v State of New York*, 54 AD2d 1064, 1065 [1976]; *see Matter of City of Long Beach v Sun NLF Ltd. Partnership*, 124 AD3d 654, 655 [2015]; *Gyrodyne Co. of Am., Inc. v State of New York*, 89 AD3d 988, 990 [2011]; *Matter of City of New York*, 94 AD2d 724 [1983], *affd Matter of City of New York [Jomar Real Estate Corp.]*, 61 NY2d 843 [1984]).

Although "[i]n condemnation cases, the authority of this Court to review findings of fact after a nonjury trial is as broad as that of the trial court" and it " 'may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses' " (*Matter of Mazur Bros., Inc. v State of New York*, 97 AD3d 826, 828 [2012], quoting *BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp.*, 89 AD3d 883, 884 [2011]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]), "[w]here the trial court's explanation of its award is supported by the evidence, it is entitled to deference and will not be disturbed on appeal" (*Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC*, 74 AD3d 804, 806 [2010]; *see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.]*, 139 AD3d 863 [2016]; *Chemical Corp. v Town of E. Hampton*, 298 AD2d at 423).

Here, the Supreme Court properly determined that the claimant had established that, in the absence of the project, there was a reasonable probability that the property would have been rezoned to C6-2A. Contrary to ESDC's contention, the court's failure to delineate the exact boundaries of a prob-

able rezoning did not undermine its finding that the property would probably have been rezoned absent the project. The court's findings that many of the buildings in the immediate area had been converted to commercial and residential use, that New York City policy was to rezone underutilized industrial sites to allow for commercial or residential development, and that a zoning district with a FAR of six would be in scale to this portion of Atlantic Avenue were supported by the record. The court properly distinguished the Atlantic Avenue corridor from lots on the more narrow Pacific Street, which are more functionally part of Prospect Heights than the subject property. The fact that a rezoning of the immediate area to C6-2A would result in certain nonconforming uses, such as the rail yards, does not undermine the court's determination that such a rezoning was reasonably probable. The property and its immediately surrounding blocks comprised a section of outdated manufacturing zoning within a large area of residential and commercial rezonings. Finally, the lease on the property was not a legal impediment to the City undertaking such a rezoning of the property.

Further, the Supreme Court properly accepted the highest and best use proposed by the claimant of a 12-story budget hotel (*see Matter of City of Long Beach v Sun NLF Ltd. Partnership*, 124 AD3d at 655; *Matter of Metropolitan Transp. Auth. [Longridge Assoc., L.P.]*, 122 AD3d 856, 858 [2014]). Contrary to ESDC's contention, the Amoco lease on the property did not prohibit a finding of a different highest and best use than contemplated in the lease, since the property must be valued at "its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time" (*Chemical Corp. v Town of E. Hampton*, 290 AD2d at 420; *see Irv-Ceil Realty Corp. v State of New York*, 43 AD2d 775 [1973]). The court's determination that a 12-story budget hotel would be legally and physically possible and financially feasible on the property was supported by the record, including testimony by ESDC's own expert regarding alternate designs for such a hotel which would meet the zoning requirements, and the evidence of an increased demand for and development of hotels in Brooklyn around the vesting date. The court was not required to accept the opinions of ESDC's experts on the financial feasibility issue.

Having determined that the highest and best use of the property was as a budget hotel following a rezoning to C6-2A, the Supreme Court properly rejected ESDC's appraisal and based its award on the claimant's appraisal with such adjust-

ments as the evidence supported (*see Matter of City of Long Beach v Sun NLF Ltd. Partnership*, 124 AD3d at 655). Contrary to the claimant's contention, the deduction of extraordinary costs to account for excavation and replacement of unsuitable soils, with related excavation protection, underpinning and pile foundation, and LIRR costs were supported by the record (*see Matter of New Cr. Bluebelt, Phase 4.*, 122 AD3d 859, 863-864 [2014]). Leventhal, J.P., Roman, Sgroi and LaSalle, JJ., concur.