Lebov, LLC v State of New York (2020 NY Slip Op 04153)





Lebov, LLC v State of New York


2020 NY Slip Op 04153


Decided on July 22, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 22, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
WILLIAM F. MASTRO
LINDA CHRISTOPHER
PAUL WOOTEN, JJ.


2017-05437

[*1]Lebov, LLC, appellant,
v
State of New York, respondent. (Claim No. 121102)


Goldstein, Rikon, Rikon & Houghton, P.C., New York, NY (Michael Rikon of counsel), and Berkman, Henoch, Peterson, Peddy & Fenchel, P.C., Garden City, NY (Saul R. Fenchel of counsel), for appellant (one brief filed).
Letitia James, Attorney General, New York, NY (Steven C. Wu and Linda Fang of counsel), for respondent.



DECISION & ORDER
In a claim to recover damages arising from a partial taking of real property, the claimant appeals from a judgment of the Court of Claims (Debra A. Martin, J.), dated March 29, 2017. The judgment, insofar as appealed from, upon a decision of the same court dated October 28, 2016, made after a trial, awarded the claimant the principal sum of only $232,000 for direct damages and lost site improvements, and denied so much of the claim as sought to recover consequential damages.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
The claimant was the owner of an 8.6-acre parcel of real property in the Town of Wallkill, located at 90 Crystal Run Road near the interchange of State Route 17 and Interstate 84. The property is improved with a four-story, Class A office building that has approximately 90,000 square feet of rental space. On July 14, 2011, the defendant, State of New York, appropriated 34,930 square feet, or 0.802 acres, of the property. Prior to the taking, the property had a landscaped, 50-foot buffer area between the parking lot in front of the building and the edge of Crystal Run Road. The State appropriated nearly all of the buffer area along the frontage of the property for the purpose
of widening Crystal Run Road.
In March 2012, the claimant's predecessor commenced this claim in the Court of Claims. The claim sought direct damages for the value of the appropriated land and damages arising from the loss of site improvements. The claim also sought severance or consequential damages for the diminution in value to the remainder of the property. In this regard, the claim alleged, among other things, that the taking precluded an expansion of the building and would result in a seasonal loss of 50 parking spaces to accommodate snow storage. After a trial, the court issued a decision dated October 28, 2016, finding that the claimant was entitled to the principal sum of $232,000 for direct damages and lost site improvements as a result of the State's partial taking of the claimant's real property. However, the court denied so much of the claim as sought to recover consequential damages for, among other things, the alleged loss of expansion potential and parking spots. A judgment dated March 29, 2017, awarded the claimant the principal sum of $232,000 for direct damages and lost site improvements.
"When the State takes property by eminent domain, the Constitution requires that it compensate the owner so that he [or she] may be put in the same relative position, insofar as this is possible, as if the taking had not occurred'" (Matter of City of New York [Kaiser Woodcraft Corp.], 11 NY3d 353, 359, quoting City of Buffalo v Clement Co., 28 NY2d 241, 258). Where there is a partial taking of land, courts usually apply a "before and after" rule, which measures damages as the difference between the fair market value of the whole property before the taking and the fair market value of the remainder of the property after the taking (Lerner Pavlick Realty v State of New York, 98 AD3d 567, 568). "In determining an award to an owner of condemned property, the findings must either be within the range of the expert testimony or be supported by other evidence and adequately explained by the court" (Matter of City of New York [Reiss], 55 NY2d 885, 886; see Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1089).
Here, since the Court of Claims' determination of the amount of direct damages was within the range of the parties' expert testimony and was also adequately explained, there is no reason to disturb the determination (see Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787). Contrary to the claimant's contention, the record demonstrates that the court did not disregard the comparable sales relied upon by the parties' experts or "adopt" the comparable sales analyzed by the court in a prior case. Accordingly, the claimant failed to demonstrate that the court erred in determining the value of the appropriated land (see Matter of 730 Equity Corp. V New York State Urban Dev. Corp., 142 AD3d at 1089-1090; Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d 804, 806). Additionally, "when the State takes part of a condemnee's property and leaves a remainder, just compensation includes not only the direct damages for the portion that was taken, but also any consequential or indirect damages caused by the taking that impaired the remaining portion of the property" (Lerner Pavlick Realty v State of New York, 98 AD3d at 568; see Crystal Run Assoc., LLC v State of New York, 169 AD3d 764, 765). "Consequential damages are measured by the difference between the before and after values of the property, less the value of the land and improvements appropriated" (Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC, 74 AD3d at 805). However, a partial taking does not in itself cause a consequential loss (see id.). "Damages for such a loss must be based upon either the opinion of an experienced, knowledgeable expert . . . or on actual market data showing a reduction in the value of the remainder as a result of the appropriation" (id. [internal quotation marks omitted]; see Matter
of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d at 792-793). "The burden of proof is on the claimant to establish indirect damages and to furnish a basis upon which a reasonable estimate of those damages can be made" (Lerner Pavlick Realty v State of New York, 98 AD3d at 568). "Whether a partial taking diminishes the value of the remaining property is a credibility issue for the trial court" (Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d at 793).
We agree with the determination of the Court of Claims denying so much of the claim as sought to recover consequential damages. Although the claimant asserted that it sustained more than $2.7 million in consequential damages, the claimant failed to meet its burden of proof "to establish indirect damages and to furnish a basis upon which a reasonable estimate of those damages can be made" (Lerner Pavlick Realty v State of New York, 98 AD3d at 568). As the court noted, the claimant did not present evidence that the potential expansion was physically possible in light of the existing zoning requirements, or that it was economically feasible. To the extent that the claimant argues on appeal that an award of consequential damages was appropriate because the partial taking reduced the amount of parking available on the property, we agree with the court's determination declining to award consequential damages on this basis (see Bay Islip Assoc. v State of New York, 27 AD3d 407, 408).
Finally, contrary to the claimant's contention, the Court of Claims providently exercised its discretion in denying the claimant's request to impose sanctions for the spoliation of evidence by according an adverse inference with respect to the alleged destruction of draft appraisal reports prepared by the State's appraiser (see CPLR 3126; see generally Lilavois v JP Morgan Chase & Co., 151 AD3d 711, 712). The claimant did not present any evidence that the State's appraiser violated the Uniform Standards of Professional Appraisal Practice by failing to maintain in his work file a prior draft appraisal report that was transmitted to the State. Further, the claimant failed to present any evidence that the State's appraiser created and intentionally destroyed prior drafts of the [*2]submitted appraisal report, which were relevant to the claimant's claim (see Lilavois v JP Morgan Chase & Co., 151 AD3d at 712). Accordingly, we agree with the court's determination declining to accord an adverse inference to the State's appraiser's testimony and appraisal report (cf. Matter of Western Ramapo Sewer Extension Project, 120 AD3d 703, 705; Matter of Village of Port Chester [Bologna], 95 AD3d 895, 897).
The claimant's contention that the State's appraisal was "legally deficient," as the State's appraiser was not qualified to provide an expert opinion, raised for the first time on appeal in its reply brief, is not properly before the Court (see Oppenheim v Oppenheim, 168 AD3d 1085, 1088; Hsu v Carlyle Towers Coop. "B," Inc., 102 AD3d 835, 837).
The claimant's remaining contentions are without merit.
SCHEINKMAN, P.J., MASTRO, CHRISTOPHER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court