Matter of City of New York (Eman Realty Corp.) (2021 NY Slip Op 04752)





Matter of City of New York (Eman Realty Corp.)


2021 NY Slip Op 04752


Decided on August 25, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 25, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON
PAUL WOOTEN, JJ.


2018-00873
 (Index No. 33132/08)

[*1]In the Matter of City of New York, appellant; Eman Realty Corp., respondent.


Georgia M. Pestana, Corporation Counsel, New York, NY (Adam Dembrow and Meagan Keenan of counsel), for appellant.
Alan J. Firestone, Brooklyn, NY, for respondent.



DECISION & ORDER
In a condemnation proceeding, the condemnor, City of New York, appeals from an order, judgment, and fifth separate and partial final decree (one paper) of the Supreme Court, Kings County (Wayne Saitta, J.), dated November 2, 2017. The order, judgment, and fifth separate and partial final decree, upon a decision of the same court dated September 8, 2017, made after a nonjury trial, finding that the value of the subject property was $5,549,000, awarded the claimant the principal sum of $5,549,000 as just compensation for the taking of its property.
ORDERED that the order, judgment, and fifth separate and partial final decree is modified, on the law, by reducing the final award from the principal sum of $5,549,000 to the principal sum of $3,959,000; as so modified, the order, judgment, and fifth separate and partial final decree is affirmed, without costs or disbursements.
On January 27, 2009, the City of New York condemned several adjoining parcels of real property in Brooklyn which were owned by the claimant (hereinafter the subject property). The claimant, Eman Realty Corp., thereafter filed a claim against the City for just compensation seeking direct damages for the loss of the subject property. At a nonjury trial on the issue of just compensation, the parties' experts agreed that, because the multifamily buildings on the subject property were subject to rent stabilization, the highest and best use for the subject property was for continued use as a multifamily dwelling complex. The parties' experts also utilized both the sales comparison approach and the income capitalization approach in order to determine a value for the subject property. In employing each approach, however, the parties' experts did not utilize the same techniques and data.
The City's expert determined the value of the subject property under the income capitalization approach by calculating the subject property's net operating income, i.e., the total rent roll minus expenses and vacancy loss. The net operating income was then divided by the subject property's capitalization rate, a figure determined using a mathematical formula known as the Akerson Format, which accounts for both the cost and availability of mortgage financing as well as the rate of return on the equity in the subject property. The City's expert also included a capital deduction of $746,000 for certain purportedly critical repairs on the subject property. Under the [*2]sales comparison approach, the City's expert derived a value for the subject property based on six comparison sales around Brooklyn between September 2006 and January 2009. In reconciling the two approaches, the City's expert determined that the value of the subject property was $1,750,000.
The claimant's expert determined the value of the subject property under the income capitalization approach by calculating the subject property's effective gross income, i.e., the subject property's total annual rent roll, inclusive of a 6.5% anticipated rent increase, minus the anticipated vacancy loss. The effective gross income was then multiplied by an effective gross income multiplier (hereinafter EGIM). Under the sales comparison approach, the claimant's expert derived a value for the subject property based on seven separate sales. Under both approaches, the claimant's expert determined that the value of the subject property was $5,000,000.
The parties' experts also disagreed as to whether the highest and best use of the subject property included the sale of transferrable development rights (hereinafter TDRs) to neighboring properties. The City's expert determined that the subject property's TDRs were unmarketable, and therefore had no value. The claimant's expert determined that the subject property had 20,390 square feet of excess TDRs that were available for transfer to two potential receptor sites. By utilizing the sales comparison approach for nine sales of underdeveloped land and four separate TDR sales, the claimant's expert determined that the subject property's TDRs had a value of approximately $2,100,000, resulting in a final value of $7,100,000 for the subject property.
In a decision dated September 8, 2017, the Supreme Court determined that the claimant was entitled to an award of $5,549,000 as just compensation for the taking of the subject property. Of this sum, approximately $3,959,000 represented the value of the subject property's land and the buildings situated thereon, and $1,590,000 represented the value of the subject property's TDRs. An order, judgment, and fifth separate and partial final decree dated November 2, 2017, was entered in favor of the claimant and against the City in the principal sum of $5,549,000. The City appeals.
"In condemnation cases, the authority of this Court to review findings of fact after a nonjury trial is as broad as that of the trial court" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d 826, 828; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499). "This court 'may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses'" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d at 828, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884; see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d at 499). "The measure of damages in a condemnation case 'must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1088, quoting Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513, 514 [internal quotation marks omitted]; see Matter of City of New York [Franklin Record Ctr.], 59 NY2d 57, 61; Chemical Corp. v Town of E. Hampton, 298 AD2d 419, 420). "The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1088; see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536).
"In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony or be supported by other evidence and adequately explained by the court" (Matter of City of New York [Reiss], 55 NY2d 885, 886; see Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089; Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787, 790). "Where the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question 'with such adjustments as the evidence will support'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Crosby v State of New York, 54 AD2d 1064, 1065; see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 654, 655-656).
Here, the Supreme Court's determination that the subject property's land and improvements had a value of $3,959,000 was within the range of testimony and supported by the record. The claimant's expert noted that income multipliers are easy to work with, in part, because a prospective purchaser will base the purchase price on the amount of revenue they could ultimately generate from the property. In addition, the City's expert did not assert that applying a gross income multiplier (hereinafter GIM) to potential gross income was an improper method of calculating the value of the subject property. Rather, in challenging the claimant's expert's use of an EGIM of 14, the City's expert applied a GIM of 10.5 to the claimant's expert's potential gross income calculation and arrived at a value identical to the value calculated by the Supreme Court.
Contrary to the City's contention, the fact that the Supreme Court acknowledged that the GIM averages provided to the parties by Massey Knakal Realty Services (hereinafter Massey Knakal) did not specify the extent to which rent-stabilized buildings were represented in this average does not require a wholesale rejection of all Massey Knakal data. Moreover, the court properly rejected the City's expert's use of the capitalization rate in the income capitalization approach, as both experts acknowledged that calculating the capitalization rate requires the use of unreliable figures, including operating expenses.
However, the Supreme Court's determination that the subject property's TDRs were marketable and had a value of approximately $1,590,000 was not supported by the record. When TDRs are transferred between two adjacent lots, the two lots covenant to be part of an assemblage, i.e., be treated as a single lot for zoning purposes. "The fact that the most profitable use of a parcel can be made only in combination with other lands does not necessarily exclude that use from consideration if the possibility of combination is reasonably sufficient to affect market value" (Olson v United States, 292 US 246, 256). "Thus, a claimant is entitled to the fair market value of its property for its highest and best available use even though that use is in connection with adjoining properties, provided there is a reasonable probability that the condemned property would be combined with other tracts in the reasonably near future" (Matter of Metropolitan Transp. Auth., 86 AD3d 314, 320; see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 651, 652-653; cf. Matter of New York State Urban Dev. Corp. [RRNT Assoc.], 308 AD2d 414, 414).
Here, the claimant's expert testified that the area immediately surrounding the subject property had undergone substantial development between 2006 and 2009. The claimant's expert also noted that, had the project which led to the condemnation of the subject property never occurred, lots 29 and 37, two adjacent lots which were potential TDR receptor sites consisting of vacant land, would not have been condemned. However, the claimant's expert's assertion that, absent the project, it was likely that these receptor sites and the subject property's TDRs would have been purchased for development was speculative. The claimant did not present any evidence which showed that, at any time prior to the condemnation, any steps were taken to form an assemblage with the adjacent properties or to sell the subject property's TDRs (see Matter of New York State Urban Dev. Corp. [RRNT Assoc.], 308 AD2d at 414; cf. Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d at 652-653). Moreover, the claimant's expert acknowledged that there was no evidence that the owners of either of these adjacent lots had interest in purchasing the subject property's TDRs. While the claimant's expert stated, in a conclusory fashion, that there was one potential sale of the subject property that did not go through, he did not specify who the purchaser was or when the potential sale would have occurred.
Accordingly, we modify the order, judgment, and fifth separate and partial final decree by subtracting from the claimant's award the sum of $1,590,000, representing the Supreme Court's determination as to the value of the subject property's TDRs, thereby reducing the final award from the principal sum of $5,549,000 to the principal sum of $3,959,000.
CHAMBERS, J.P., MILLER, BRATHWAITE NELSON and WOOTEN, JJ., concur.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court