Matter of Chynn v County of Suffolk (2022 NY Slip Op 02541)

Matter of Chynn v County of Suffolk

2022 NY Slip Op 02541

Decided on April 20, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 20, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
REINALDO E. RIVERA
ROBERT J. MILLER
JOSEPH A. ZAYAS, JJ.

2019-09107
2019-09108
 (Index Nos. 606607/17, 606610/17)

[*1]In the Matter of Emil Chynn, respondent,
v
County of Suffolk, appellant. (Proceeding No. 1)
In the Matter of Roy Dalrymple, et al., respondents,
v County of Suffolk, appellant. (Proceeding No. 2)

Carter Ledyard & Milburn, LLP, New York, NY (John R. Casolaro, Lee A. Ohliger, Mark R. Zancolli, and Michael H. Bauscher of counsel), for appellant.
Certilman Balin Adler & Hyman, LLP, East Meadow, NY (M. Allan Hyman and Rebecca Sklar of counsel), for respondents.

DECISION & ORDER
In two related proceedings pursuant to EDPL article 5 for compensation arising from the condemnation of real property, the condemnor appeals from (1) a judgment of the Supreme Court, Suffolk County (John J. Leo, J.), dated June 25, 2019, and (2) a judgment of the same court also dated June 25, 2019. The first judgment, upon a decision of the same court dated June 12, 2019, made after a nonjury trial, finding that the value of the real property owned by the claimant Emil Chynn was $1,750,000, awarded the claimant Emil Chynn the principal sum of $1,750,000 as just compensation for the taking of that real property. The second judgment, upon the decision dated June 12, 2019, made after a nonjury trial, finding that the value of the real property owned by the claimants Roy Dalrymple and Lynda Dalrymple was $1,830,000, awarded the claimants Roy Dalrymple and Lynda Dalrymple the principal sum of $1,830,000 as just compensation for the taking of that real property.
ORDERED that the first judgment dated June 25, 2019, is modified, on the law, by deleting from the third decretal paragraph thereof the provision awarding the claimant Emil Chynn the principal sum of $1,750,000, and substituting therefor a provision awarding the claimant Emil Chynn the principal sum of $1,578,000; as so modified, the first judgment is affirmed; and it is further,
ORDERED that the second judgment dated June 25, 2019, is modified, on the law, by deleting from the third decretal paragraph thereof the provision awarding the claimants Roy Dalrymple and Lynda Dalrymple the principal sum of $1,830,000, and substituting therefor a provision awarding the claimants Roy Dalrymple and Lynda Dalrymple the principal sum of $1,646,000; as so modified, the second judgment is affirmed; and it is further,
ORDERED that one bill of costs is awarded to the appellant.
The two subject properties, owned by the claimant Emil Chynn and the claimants Roy Dalrymple and Lynda Dalrymple (hereinafter together the Dalrymples), respectively, are oceanfront properties located in the Ocean Bay Park neighborhood of Fire Island, and consist of single lots, approximately 5,000 square feet in size, improved with single-family homes. On October 21, 2016, the County of Suffolk took title to the subject properties in fee simple as part of an extensive project to reconstruct beaches and restore the dune network on several barrier islands that were damaged during Hurricane Sandy. Chynn and the Dalrymples (hereinafter collectively the claimants) subsequently filed separate claims demanding just compensation and seeking direct damages for the loss of the subject properties. At a joint nonjury trial on the issue of just compensation, the parties' experts agreed that the highest and best use of the subject properties was the continued use as residential dwellings. The parties' experts both utilized the sales comparison approach in order to determine a market value for the subject properties. In employing this approach, however, the parties' experts did not utilize the same techniques or data.
To determine the value of both of the subject properties, the claimants' expert appraiser, Donald Franklin, used a set of six comparable sales that occurred across Fire Island between April 2007 and March 2016. The sale price of each comparable sale was given upward or downward adjustments based on, among other things, the market conditions at the time of the sale, the comparable sale's location, and the unique characteristics of the comparable sale and its improvements relative to each of the subject properties. In addition, Franklin provided an upward adjustment of 10% to account for the effects of "condemnation blight" on each of the properties. According to Franklin, this adjustment was warranted because the threat of condemnation following Hurricane Sandy and the announcement of the barrier beach restoration project led to a decline in market activity for waterfront homes in the area. Accounting for each of these adjustments, Franklin determined that the market value of the Chynn's property as of October 21, 2016, was $2,000,000, and that the market value of the Dalrymples' property as of October 21, 2016, was $2,300,000.
The County's expert appraiser, Lawrence Indimine, utilized a set of five improved comparable sales to determine the market value of each of the subject properties. The sale price of each comparable sale was given upward or downward adjustments based on, among other things, the market conditions at the time of the sale, each comparable sale's location, and the unique characteristics of each comparable sale. Accounting for each of these adjustments, Indimine determined that, as improved, the market value of the Chynn's property as of October 21, 2016, was $1,500,000, and that the market value of the Dalrymples' property as of October 21, 2016, was $1,475,000.
Following the trial, the Supreme Court determined that since the sales comparison approach utilized by both parties included one common comparable sale located in the adjacent hamlet of Seaview, this sale would be utilized in determining the value of the subject properties. As is relevant here, in determining the value of both of the subject properties, the court made five adjustments to the common comparable sale. First, the court accepted the claimants' upward adjustment of 3% per year to account for market conditions at the time of the taking relative to the time of the common comparable sale. Second, the court applied a downward adjustment of 3% to account for the inferior location of the subject properties relative to the common comparable sale. Third, the court found that, since the common comparable sale's view of the ocean was obstructed, whereas the subject properties both had an unobstructed view of the ocean, an upward adjustment of 10% was appropriate. Fourth, the court determined that differences between the common comparable sale's deck and the decks of the subject properties warranted a downward adjustment of $10,000 for both properties. Finally, the court determined that an upward adjustment of 5% was appropriate to account for the impact of condemnation blight on the subject properties. Based on these adjustments, the Supreme Court concluded that the value of Chynn's property was $1,750,000, and that the value of the Dalrymples' property was $1,830,000. Judgments reflecting these determinations were entered in favor of the claimants, and the County appeals.
"In condemnation cases, the authority of this Court to review findings of fact after [*2]a nonjury trial is as broad as that of the trial court" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d 826, 828; see Matter of City of New York [Eman Realty Corp.], 197 AD3d 705, 707). "This court 'may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses'" (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d at 828, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884; see Matter of Town of Oyster Bay v 55 Motor Ave. Co., LLC, 187 AD3d 760, 761-762). "The measure of damages in a condemnation case 'must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1088, quoting Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513, 514 [internal quotation marks omitted]; see Chemical Corp. v Town of E. Hampton, 298 AD2d 419, 420). "'In determining an award to an owner of condemned property, the findings must either be within the range of expert testimony or be supported by other evidence and adequately explained by the court'" (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089, quoting Matter of City of New York [Reiss], 55 NY2d 885, 886; see Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787, 790).
The Supreme Court erred in determining that an upward adjustment of 3% per year was warranted to account for changing market conditions between the date of the common comparable sale and the vesting date. While Franklin testified that a review of the market conditions in the area showed that the market had been increasing during that period, he also testified that he did not have any data or other evidence to support his proposed market conditions adjustment. Thus, since the record does not provide a basis to check or test these conclusions, an upward adjustment of 3% per year for market conditions was not warranted (see Matter of Board of Mgrs. of French Oaks Condominium v Town of Amherst, 23 NY3d 168, 177).
However, contrary to the County's contention, the record does not support its proposed 2% downward adjustment for market conditions. Where surveys and other published reports are utilized by an expert appraiser, there must be some evidence or other affirmative demonstration which shows that these reports and surveys are relevant to the local area or the market in which the subject property is situated (see Matter of Center Albany Assoc. LP v Board of Assessment Review of the City of Troy, 151 AD3d 1420, 1424; Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor, 225 AD2d 841, 844). Here, Indimine utilized a sales survey published by Douglas Elliman Real Estate (hereinafter Douglas Elliman) to determine that his proposed 2% downward adjustment for market conditions was proper. The Douglas Elliman sales survey covered home sales in Nassau and Suffolk counties between 2007 and 2016. Yet Indimine testified that he did not know how many homes on Fire Island were included in the Douglas Elliman sales survey, that there was no way to determine how the mean and median values reported in the Douglas Elliman sales survey were calculated, and that there was no data to support his theory that the housing market on Fire Island was similar to that throughout Nassau and Suffolk counties during this period.
The Supreme Court erred in determining that a 5% upward adjustment was appropriate to account for condemnation blight. Generally, "the mere announcement of impending condemnations, coupled as it may well be with substantial delay and damage, does not, in the absence of other acts which may be translated into an exercise of dominion and control by the condemning authority, constitute a taking so as to warrant awarding compensation" (City of Buffalo v Clement Co., 28 NY2d 241, 257 [emphasis omitted]). However, "the aggrieved property owner has a remedy where it would suffer severely diminished compensation because of acts by the condemning authority decreasing the value of the property" (id. at 257; see Niagara Frontier Bldg. Corp. v State of New York, 33 AD2d 130, affd 28 NY2d 755). Here, the court noted in its decision that information about the restoration project and the potential condemnation of properties "percolated through the Fire Island Community." However, the claimants failed to set forth any affirmative conduct by the County that unreasonably interfered with or further depressed the value of the subject properties sufficient for the condemnation blight theory to apply (see Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 866; Matter of Village of Port Chester, 43 AD3d 943, 945; Samfred Belt Line Corp. v State of New York, 43 AD2d 62, 65; cf. City of Buffalo [*3]v Irish Paper Co., 31 AD2d 470, 473, affd 26 NY2d 869).
Finally, the Supreme Court's application of a 3% downward location adjustment, a 10% upward view adjustment, and a $10,000 downward deck adjustment were supported by the testimony at the trial and the record (see Matter of City of New York [Reiss], 55 NY2d at 886; Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d at 1089; Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d at 790). However, we reduce the location adjustment from negative $51,000 to negative $48,000, and we reduce the view adjustment from $169,000 to $160,000, since these adjustments were originally calculated after the market conditions adjustment was improperly applied to the sale price of the common comparable sale.
Thus, after striking the adjustments for market conditions and condemnation blight, reducing the adjustments for view and location accordingly, and leaving all remaining adjustments undisturbed, the Supreme Court should have determined that the value of the property owned by the claimant Emil Chynn was $1,578,000, and the value of the property owned by the claimants Roy Dalrymple and Lynda Dalrymple was $1,646,000.
BRATHWAITE NELSON, J.P., RIVERA, MILLER and ZAYAS, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court